UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA,
LOCAL # 308, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

BERRY–MAHURIN CONSTRUCTION,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 81–2131, 81–2189.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1982.

Decided July 16, 1982.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr., Collis Suzanne Stocking, Attys., N. L. R. B., Washington, D.C., for respondent.

Patrick M. Roby, Diane Kutzko, for Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for Berry-Mahurin Const., Inc.

Robert E. O'Connor, Jr., of Robert E. O'Connor & Associates, Omaha, Neb., Robert F. Wilson, Cedar Rapids, Iowa, for United Broth. of Carpenters, and Joiners of America, Local # 308, AFL–CIO.

Before LAY, Chief Judge, MARKEY,[*] Judge, and HENLEY,[**] Circuit Judge.

HENLEY, Senior Circuit Judge.

The United Brotherhood of Carpenters and Joiners of America, Local # 308, and Berry-Mahurin Construction, Inc. have petitioned this court for review of an order of the National Labor Relations Board finding both in violation of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* based on the union's refusal to refer and the company's refusal to hire Brian Lucas. For the reasons set forth below, we grant the Board's cross-application for enforcement against both the company and the union.

In July, 1976 Brian Lucas joined Local 308, a member of the Five River Carpenters District Council, in Cedar Rapids, Iowa, and was placed in the apprentice program. After remaining on the out-of-work list for some time, Lucas found work on his own with a non-union contractor and withdrew from the union. In December, 1979 Lucas went to Ottumwa, Iowa, to look for work, and there joined Local 767, also a member of the District Council. In filling out Lucas' application, Local 767's business manager Norman Wemer asked Lucas if he had ever been a member of the United Brotherhood. Lucas replied that he had worked as a carpenter's helper in 1976 and had paid dues to the union. Wemer allegedly said that that should not make any difference and answered "no" to the question on the form concerning the applicant's prior membership. Lucas obtained a journeyman's book and worked for a month before being laid off. With Wemer's encouragement, he then sought employment with Berry-Mahurin at the Duane Arnold Energy Center in Palo, Iowa, located in Local 308's jurisdiction.

Lucas contacted Larry Brannaman, job superintendent for the company, several times during the first two weeks of January, 1980. David Pladsen, a friend of Lucas who worked at the Energy Center, telephoned Lucas on January 14 at Brannaman's request and told him to go to the project because the company would be hiring that day. Lucas went to the job site and filled out an application. While he was waiting to take a polygraph test, Brannaman called the union and spoke with either Calvin Kennedy or Harold Heath.[1] After hearing the list of applicants' names, Kennedy or Heath asked Brannaman how Lucas had obtained a union card. When Brannaman replied that Lucas had a journeyman's card from Local 767, Kennedy or Heath refused to refer Lucas for the stated reason that he "must have falsified" his application to Local 767.

Brannaman, accompanied by a union steward, then approached Lucas, who was still waiting to take the polygraph test, and said, in effect, that Lucas should straighten out his problem with the union and come back later.[2] Lucas requested a meeting

---

[*] Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

[**] Judge Henley assumed senior status June 1, 1982.

1. Kennedy and Heath were the business manager and business representative respectively for the District Council.

2. Lucas testified as follows: "Larry Brannaman told me that he did not know what was going on but to get it straightened out with the union hall and that he would still hire me later on in

with Heath and Kennedy during which Heath called him a "runaway cub," accused him of falsifying his application to Local 767, and said that he would have Lucas' journeyman's book taken away. Although Lucas explained that he had told Wemer the truth about his earlier membership, he was unable to resolve the dispute. Lucas did not go back to Berry-Mahurin, but returned to Ottumwa and worked pursuant to a Local 767 referral until he was informed by Wemer that his journeyman's book was being taken away.

The Board adopted the ALJ's findings and conclusions that the union violated §§ 8(b)(1)(A) and 8(b)(2) of the Act[3] by refusing to refer Lucas both because he was not a member of Local 308 and because he had not executed an employee dues check-off authorization form. This latter violation merits some explanation. The collective bargaining agreement provided that the union was to be the primary source of employees for the company, but required the union to refer on a non-discriminatory basis. The union, however, routinely used an employee dues check-off authorization form as a referral slip. The Board found that this policy had the effect of unlawfully conditioning referral on membership.[4]

Berry-Mahurin was found to have violated §§ 8(a)(1) and 8(a)(3) of the Act[5] by refusing to employ Lucas in acquiescence to the union's unlawful failure to refer him.

In petitioning for review, the union's sole contention is that it lost its status as a "labor organization" within the meaning of the Act[6] when it joined other locals in 1974 to form the Five River Carpenters District Council, and that it is therefore not subject to the provisions of the Act. Although the District Council assumed responsibility for collective bargaining on behalf of the locals, the individual locals continue to represent their members concerning certain benefits of the agreement. It also appears that the District Council has no employee members but consists of elected members of the affiliated locals. The Board, relying on *Local No. 64, Falls Cities District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America,* 204 N.L.R.B. No. 102, 83 L.R.R.M. 1493 (1973), concluded that because the District Council acted in furtherance of the locals' interests, its representatives were agents of the union. This is supported by the ALJ's observation that Local 308 admitted in its answer that the

---

their hiring, in one of their later hiring sessions."

Brannaman testified as follows: "I suggested to Brian that he go back to the union hall and see if he could straighten out the problem that he had with them and come back later."

3.  29 U.S.C. §§ 158(b)(1)(A) and (b)(2) provide in pertinent part:

    (b) It shall be an unfair labor practice for a labor organization or its agents—

    (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . .;

    (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or regaining membership . . . .

4.  The union contends that the form in question is an authorization for deductions for fringe benefits rather than dues. Neither the union nor the company, however, challenges the

Board's finding that the union's use of these forms as referral slips is unlawful.

5.  29 U.S.C. §§ 158(a)(1) and (a)(3) provide in pertinent part:

    (a) It shall be an unfair labor practice for an employer—

    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

    *    *    *    *    *    *

    (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

6.  29 U.S.C. § 152(5) provides:

    (5) The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

District Council's representatives were agents of Local 308 within the meaning of the Act.

We conclude that substantial evidence supports the Board's conclusion that Local 308 is a "labor organization" and is responsible for violations of the Act committed by its agents.

■ The company contends that there is not substantial evidence to support the Board's finding that Brannaman, by refusing to hire Lucas, acquiesced to the union's unlawful failure to refer Lucas. *See NLRB v. American Postal Workers Union,* 618 F.2d 1249, 1259 (8th Cir. 1980), *and cases cited therein.* First, the company denies that Brannaman's statement to Lucas, to the effect that he should straighten out his problem with the union and then come back, constitutes a *refusal to hire.* The Board construed this statement as conditioning Lucas' application on the resolution of his dispute with the union, and thus as tantamount to a refusal to hire him without a union referral.[7] The record offers little assistance in clarifying this ambiguous statement. The Board attempts to support its interpretation by the uncontested fact that the company never hired employees who were not members of Local 308, but it appears from the record that Lucas was the first nonmember to apply for employment. Nevertheless, we cannot say the Board's construction is unreasonable when viewed in the totality of the circumstances,[8] and although we might have interpreted Brannaman's statement differently if this issue were before us de novo, we must uphold "the Board's choice between two fairly conflicting views." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), *quoted in NLRB v. Hale Mfg. Co., Inc.,* 570 F.2d 705, 708 (8th Cir. 1978).

■ The company next contends that regardless of the meaning of Brannaman's statement, he was not motivated by the intent to encourage union membership. *See Radio Officers' Union of the Commercial Telegraphers Union v. NLRB,* 347 U.S. 17, 42–43, 74 S.Ct. 323, 336–337, 98 L.Ed. 455 (1954). It is established that an inference of unlawful motive may be based on an employer's knowing acquiescence to a union's violation of the Act.[9] *See NLRB v. American Postal Workers Union,* 618 F.2d at 1259, *and cases cited therein.* The Board

---

**7.** The Board contends that because Brannaman's statement conditioned Lucas' application on obtaining a union referral, Lucas' failure to return to Brannaman after the discussion with Heath and Kennedy does not alter the company's liability since further application would have been futile. *See NLRB v. Valmac Industries, Inc.,* 533 F.2d 1075, 1077 (8th Cir. 1976); *NLRB v. Lummus Co.,* 210 F.2d 377, 380–81 (5th Cir. 1954).

**8.** In cases addressing the analogous issue of whether an employee has been discharged, courts have held that the effect of the words, rather than the particular language used, is determinative, *Kaynard v. Palby Lingerie, Inc.,* 625 F.2d 1047, 1053 (2d Cir. 1980), and that it is sufficient if an employee could reasonably infer from the language used that he had been discharged. *NLRB v. Hale Mfg. Co., Inc.,* 570 F.2d 705, 708 (8th Cir. 1978).

**9.** Furthermore, unlawful motive may be presumed based on the finding of discrimination. *Kansas City Power & Light Co. v. NLRB,* 641 F.2d 553, 558-59 (8th Cir. 1981). However, where the discriminatory conduct has a comparatively slight adverse effect on employee rights, the presumption of unlawful motive can

be rebutted by a showing of a legitimate business justification, in which case the general counsel must then affirmatively prove unlawful notice. *Id.* The only reason given by Brannaman for terminating Lucas' application is that the union refused to refer him on the ground that he must have falsified his application to Local 767. The Board found that the union's allegation, even if true, did not relate to Lucas' qualifications or to any other legitimate business interest. We do not think this matter should be dismissed so perfunctorily. It is not clear that Brannaman knew about the nature of the alleged falsification or Lucas' previous withdrawal from Local 308. In addition, the job for which Lucas was applying required an applicant to submit to a polygraph test and otherwise to meet security guidelines. Thus, any alleged falsification of a document could be of legitimate concern to the company.

However, we need not decide whether the union's accusation provided a legitimate reason for the termination of Lucas' application because, as explained in the text, we find that the general counsel offered affirmative proof to support an inference of unlawful motive.

relies on inferences of unlawful motive drawn from its finding that the company, by refusing to hire Lucas, knowingly acquiesced to the union's unlawful failure to refer him.

■ In reviewing the record, we note that although the union's accusation of falsification referred to the answer to the question concerning prior union membership, it is not clear that Brannaman knew the nature of the alleged falsification or about Lucas' previous withdrawal from Local 308. Nevertheless, there is evidence that the company knew that the union used employee authorization forms as referral slips, which practice was found to be unlawful.[10] *See NLRB v. Lummus Co.,* 210 F.2d 377 (5th Cir. 1954). On this basis, we do not think the Board's inference of unlawful motive is unreasonable. Although we think this is a close issue, "[w]here either one of two inferences may reasonably be drawn from the facts, the court is bound by the Board's findings even though the court could have made a different choice if the matter were before it de novo." *NLRB v. American Postal Workers Union,* 618 F.2d at 1254. We therefore uphold the Board's finding that the company unlawfully refused to hire Lucas by acquiescing to the union's unlawful refusal to refer him.

In so doing, however, we must take note of the company's objection to that portion of the order requiring the company, jointly and severally with the union, to make Lucas whole for any loss of earnings from the date he was denied employment until the discontinuation of unlawful discrimination. We do not interpret the broad order of the Board as indicating other than the usual policy of resolving such issues in the compliance proceedings, wherein the temporary nature of the work for which Lucas was applying will undoubtedly be taken into consideration. *See NLRB v. J.S. Alberici Const. Co., Inc.,* 591 F.2d 463, 470 (8th Cir. 1979).

Enforcement granted.

10. *See* note 4 *supra.*