**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**OMAHA BUILDING AND CONSTRUCTION TRADES COUNCIL, Respondent.**

**No. 87–2123.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1988.

Decided Aug. 29, 1988.

---

Gordon B. Scott, NLRB, Washington, D.C., for petitioner.

David D. Weinberg, Omaha, Neb., for respondent.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and BENSON,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The National Labor Relations Board has applied for enforcement of its unfair labor practice order enjoining Omaha Building and Construction Trades Council from engaging in secondary picketing of Melvin Simon & Associates, Inc. with the object of forcing Simon or others to cease doing business with Kelley–Nelson Construction Co., Inc. The Council argues that it is not a labor organization; that substantial evidence does not support the Board's finding that the Council violated the secondary boycott provision of the National Labor Relations Act by picketing Simon;[1] and that the Council was deprived of due process because the Board's complaint did not allege an agency relationship between the Council and its constituent locals. We enforce the Board's order.

Melvin Simon & Associates is engaged primarily in the business of developing, leasing and managing shopping centers. Simon operates the Crossroads Mall in Omaha, Nebraska and is a member of the partnership which owns the mall. In February 1986, Simon announced that Kelley–Nelson Construction Co., Inc. would be the general contractor in a $5,000,000 renovation and construction project at the mall, and construction began in March 1986. Kelley–Nelson has employed a variety of construction workers at the jobsite and does not have a contract with any labor organization covering such workers.

On April 19 and August 9, 1986, the Omaha Building and Construction Trades Council, together with three other labor

---

* The HONORABLE PAUL BENSON, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. 29 U.S.C. § 158(b)(4)(ii)(B) (1982) provides:
(b) It shall be an unfair labor practice for a labor organization or its agents—
(4)(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
(B) forcing or requiring any person * * * to cease doing business with any other person * * *: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

groups,[2] sponsored "solidarity rallies" at the jobsite. The Council includes approximately sixteen building and trades craft local unions, each of which is represented by its selected delegates. The Council is affiliated with the AFL–CIO and governed by a constitution and by-laws prescribed by the AFL–CIO's Building and Construction Trades Department.

The president of the Council, Bernard W. Preis, testified that one purpose of the rallies was to protest Simon's use of non-union contractors on the job. Between 1,000 and 2,000 persons participated in the April 19 rally. They walked on the sidewalk on three sides of the mall, the fourth being bordered by a retaining wall and private property. Several carried signs, bearing legends such as "Melvin Simon uses neo–Nazi tactics," and "Melvin Simon and Ass. rapes the union trades." Other signs named Kelley–Nelson.

In mid-July, the Council mailed notices of a second rally to its members and approximately 50 or 60 local unions, specifically targeting Simon: "We have planned another rally for August 9 to show support of Organized Labor and the community because of MEL SIMON AND ASSOCIATES' open shop tactics." Between 800 and 1,000 people turned out for this rally, and many carried signs with legends such as "Simon Says Charge High Price Pay *Cheap* Wages," "Mel Simon Rapes the Union Workers Support Your Union," and "Simon and Ass. Uses WW II Methods."

Simon filed charges against the Council with the Board, which issued a complaint on September 30, 1986, alleging that the Council had engaged in unfair labor practices by picketing Simon at the Crossroads Mall project, in violation of 29 U.S.C. § 158(b)(4)(ii)(B). While the case was pending, the Council was enjoined from threatening, coercing or restraining Simon with the objective of forcing Simon to cease doing business with Kelley–Nelson. *Sharp*

*v. Omaha Bldg. & Constr. Trades Council,* 821 F.2d 516 (8th Cir.1987).

Following a hearing, the Board found that the Council is a statutory labor organization and that it acted unlawfully in causing demonstration picketing against Simon on April 19 and August 9. The Board found that by doing so, "the Council enmeshed Simon, a neutral, in a labor dispute the Council had with the construction project's general contractor, Kelley–Nelson." The Board found that "the Council's object was to force Simon to pressure Kelley–Nelson to convert the project to an all union job, or to make Simon * * * replace Kelley–Nelson with a general contractor who would hire and subcontract for the project on an all union basis." The Board concluded that the Council was responsible for, and thereby engaged in, secondary picketing against Simon, in violation of 29 U.S.C. § 158(b)(4)(ii)(B). The Board ordered the Council to cease and desist from such action, to post notice that it would do so, and to supply copies of such notice to Simon. On August 12, 1987, the Board filed this application for enforcement of the order.

The Council argues that substantial evidence does not support the Board's findings that the Council is a labor organization or that it engaged in unlawful picketing. The Council also argues that it was deprived of due process because the Board's complaint did not allege an agency relationship between the Council and its constituent locals, and that the Council therefore cannot be held responsible for the picketing.

### I.

█ In *Sharp*, 821 F.2d at 518, we affirmed a district court's ruling that the Board had reasonable cause to believe the Council is a "labor organization" within the meaning of 29 U.S.C. § 152(5) (1982).[3] The Council contends that the more extensive

---

2. Charges against the other groups were withdrawn pursuant to a settlement.

3. Section 152(5) defines "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in

which employees participate and which exists for the purpose, in whole or in part, of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

evidence presented to the Board in this action demonstrates that the Council is not, in fact, a statutory labor organization.

The definition of labor organization in section 152(5) is interpreted broadly, *see NLRB v. Cabot Carbon Co.*, 360 U.S. 203, 210–13 & n. 7, 79 S.Ct. 1015, 1020–22 & n. 7, 3 L.Ed.2d 1175 (1959), and the Board's finding that the Council is a labor organization must be upheld if supported by substantial evidence, *e.g., United Bhd. of Carpenters Local 308 v. NLRB*, 690 F.2d 661, 663–64 (8th Cir.1982). There is no question that substantial evidence supports the Board's findings that the Council is an organization in which employee members of the constituent locals participate through their delegates. The Board has long held that such involvement satisfies the "employee participation" requirement of section 152(5). *See Plumbers Local 388 (Charles Featherly Construction Co.)*, 252 NLRB 452, 454 (1980). The Council argues, however, that it does not deal with employers concerning such matters as wages, hours and conditions of employment, and that its primary objectives are to promote good community relations and to engage in legislative lobbying.

There was evidence in the record that the Council's constitution gives it jurisdiction over the building and construction industry in Omaha; that it has constitutional authority over picket lines and over jurisdictional disputes among building and construction trades unions and employers; that it may participate in the settlement or adjustment of such disputes; that it arranges meetings on behalf of constituent locals and employers with contractors visiting the Omaha area; that Council officers, delegates and committees have contacted employers to secure or protect jobs for members of the affiliated locals; and that the Council permitted an employer representative on April 9, 1986, to address a Council meeting and discuss various jobs in Omaha.

This evidence is sufficient to support the Board's finding that the Council deals with employers within the meaning of section 152(5). *See, e.g., Cabot Carbon*, 360 U.S. at 210–13 & n. 7, 79 S.Ct. at 1020–22 & n. 7.

The Council's reliance on *Kanawha Valley Labor Council v. American Fed'n of Labor*, 667 F.2d 436 (4th Cir.1981), is again misplaced, as in that case there was no allegation that the labor council dealt with employers over matters affecting the employees. *Id.* at 439. *See Sharp*, 821 F.2d at 517. We affirm the Board's finding that the Council is a labor organization under 29 U.S.C. § 152(5).

## II.

■ The Council also challenges the Board's finding that the Council engaged in prohibited secondary picketing at the Crossroads Mall on April 19 and August 9, 1986. The Council argues that there is no evidence that any of its agents or delegates carried signs at the rallies, or that any of the signs named the Council. Further, the Council contends that it had no dispute with Kelley–Nelson; that Simon was the object of the rallies; and therefore the rallies involved lawful primary picketing under section 158(b)(4)(ii)(B).

The Board's finding that the Council was responsible for, and thereby engaged in, the picketing at the mall must be upheld if supported by substantial evidence. *E.g., District 30, UMW v. NLRB*, 819 F.2d 651, 655–57 (6th Cir.1987) (per curiam). Here, as the Board held, there was an abundance of evidence that the Council "planned, organized, publicized, set in motion, and monitored" the two rallies, principally through Preis. *See id.* at 655 (quoting *Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351, 355 (6th Cir.1983)). The Board found that Preis was an agent of the Council. Minutes of Council meetings and letters signed by Preis, as Council president, documented the planning of the two rallies beginning in March and continuing through July. There was evidence that Preis directed the Council's delegates during the two rallies, and that Preis observed that some of the signs displayed at the rallies were directed towards Simon, but took no action to control or eliminate these signs. Indeed, the Council's notice of the August 9 rally sent out in

mid-July specifically targeted Simon, and the Council formed a committee to ensure that the signs for this rally were legible. Preis testified that the object of the rallies was the Crossroads, which "happened to be owned by Simon." Later letters from Preis thanked the participants for their support, demonstrating that the Council condoned the picketers' action. *See id.* at 655–56. With this evidence regarding the Council's responsibility for the demonstrations and the signs themselves, it is immaterial that none of the signs specifically named the Council, or that no Council officers or delegates actually carried signs at the rallies. *Cf. id.* at 655–57 (statements by district president ratified and condoned picketing by union members, rendering district liable). Accordingly, we affirm the Board's finding that the Council was responsible for, and thereby engaged in, the picketing against Simon at the Crossroads Mall on April 19 and August 9.

We are satisfied that these activities constituted unlawful secondary picketing. The Board found that the Council and certain of its affiliated locals were engaged in a labor dispute with Kelley–Nelson concerning the contractor's open shop policies. The Board also found that neither the Council nor the locals had a labor dispute with Simon. Further, the evidence established that Simon employs thirty-one persons in operating the Crossroads Mall, but no construction employees, and therefore the picketing was not "addressed to the labor relations of the contracting employer vis-a-vis his own employees." *National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 645, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357 (1967). Rather, the Board found that an object of the Council's picketing was either to cause Simon to cancel its contract with Kelley–Nelson and hire a unionized general contractor, or to pressure Simon into requiring Kelley–Nelson to hire union employees and convert the construction project to an all union job. Such an objective falls squarely within the classic definition of prohibited secondary activity. *See NLRB v. Pipefitters Local 638*, 429 U.S.

507, 526–31, 97 S.Ct. 891, 902–05, 51 L.Ed. 2d 1 (1977). The findings of the Board are supported by substantial evidence, *see id.* at 531–32, 97 S.Ct. at 905, and we accordingly affirm the Board's ruling that the April 19 and August 9 rallies involved secondary picketing in violation of section 158(b)(4)(ii)(B).

### III.

Finally, the Council argues that it is a deprivation of due process to hold it responsible for the picketing, because the Board's complaint did not allege that the constituent locals were agents of the Council, and there was no hearing on the issue.

The Board found it unnecessary to rule on this argument, and we also decline to do so. Section 158(b) defines unfair labor practices "for a labor organization or its agents." As we have seen, the Board properly found that the Council is a labor organization and that the Council was responsible for the picketing, principally through the actions of Preis. The Board alleged and proved that Preis was an agent of the Council, and imposed liability on the Council on this basis. It was therefore unnecessary for the Board to plead or prove that the local unions were also agents of the Council. The Council received adequate notice of the theory upon which the Board based its complaint and was afforded a full opportunity to be heard. There was no violation of due process in this proceeding.

The petition of the Board for enforcement of its order is granted.