REVCO D.S., INC. and/or White Cross Stores, Inc., No. 14, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 79–1389.

United States Court of Appeals, Sixth Circuit.

Argued April 8, 1981.

Decided July 1, 1981.

C. Douglas Lovett, Duvin, Flinker & Cahn, Craig Brown, Cleveland, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Henry Shore, Director, Region 6, N.L.R.B., Pittsburg, Pa., Eric G. Moskowitz, Washington, D.C., for respondent.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and CECIL, Senior Circuit Judge.

KEITH, Circuit Judge.

This case is before us on a petition for review and cross petition for enforcement of an order of the National Labor Relations Board. The Board found that the employer

in this case violated Section 8(a) of the National Labor Relations Act [1] by refusing to recognize and bargain with the Union as the duly certified representative of its employees. The Board's decision and order is reported at 243 N.L.R.B. No. 35.

On April 21, 1978, a representation election was held at the employer's retail store at Penn Mall in Pittsburgh, Pennsylvania. Seven votes were cast for the Retail Store Employees' Union; four were cast against the union.

The company objected to the election, claiming that union misconduct had tainted the election results. The Regional Director conducted an administrative investigation of the objections. On June 30, 1978, the Regional Director issued a Report and Recommendation on Objections in which he concluded that company's objections raised no "substantial or material issues with respect to conduct affecting the results of the election." Accordingly, the Regional Director recommended that the company's objections to the election be overruled and that the union be certified as the exclusive bargaining representative of the company's employees. On September 14, 1978, the Board adopted the Regional Director's findings and recommendations and certified the Union.

In order to obtain appellate review of the Board's certification of the union, the company refused to bargain with the union. The company claimed that it refused to bargain because the union was improperly certified. The Board rejected the company's claims, issued a bargaining order and ordered the customary notices to be posted.

I

A

■ In this appeal, the company challenges the fairness of the election. We note at the outset that the company has a heavy burden to justify overturning a secret ballot election. As we noted in *Harlan # 4 Coal Co. v. N.L.R.B.*, 490 F.2d 117, 120 (6th Cir.), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974), "[C]ongress has entrusted to the Board considerable latitude in resolving disputes concerning representation, and our task is to determine whether the Board has acted arbitrarily in the exercise of its wide degree of discretion." *See also Randall Burkart/Randall Div. v. NLRB*, 638 F.2d 957 (6th Cir. 1981); *NLRB v. Pinkerton's*, 621 F.2d 1322 (6th Cir. 1980).

Most of the company's objections dealt with alleged union misconduct during the pre-election campaign. The company claimed that the union made numerous misrepresentations and put out unfair propaganda. The NLRB is cautious in setting aside elections on these grounds. The standard that the Board applies is whether pre-election misstatements "may reasonably be expected to have a significant impact on the election". *Hollywood Ceramics Co., Inc.*, 140 NLRB 221, 224 (1962), *reaffirmed in General Knit of California, Inc.*, 239 NLRB No. 101 (1978).[2]

■ The regional director did find that a union agent had stated to employees that a collective bargaining agreement could be obtained by January 1979, and that another union agent stated that the union had 1 year in which to obtain an agreement. However, the regional director concluded

1. Sections 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1); (5) provide in relevant part:
    It shall be an unfair labor practice for an employer (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 ... (5) to refuse to bargain collectively with the representatives of his employees ...
Section 7 of the Act, 29 U.S.C. § 157 provides:
    Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to

engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection ...

2. This court has upheld the Board's *Hollywood Ceramics* test. *NLRB v. Pinkerton's*, 621 F.2d 1322, 1327 (6th Cir. 1980); *Harlan # 4 Coal Co. v. NLRB*, 490 F.2d 117, 124 (6th Cir.), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974); *NLRB v. Dean Foods Co., Inc.*, 421 F.2d 644, 665 (6th Cir.), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).

that these instances did not warrant overturning the election, since the union had not promised employees tangible benefits which it had the exclusive power to deliver nor had it misrepresented any existing material facts.

Similarly, the company complained that the employees were promised $50 per week in strike benefits should a strike occur, that their strike effort would be joined by one of the union's sister locals, and that local Pittsburgh customers would not cross the picket line anyway. The regional director concluded that the evidence did not support the allegations. However, even assuming the truth of the allegations, the regional director concluded that any discussion of strike benefits was not related to the election results, nor did it affect how the employees voted.

In addition, the company claimed that employee Paul Schwartz informed a fellow employee that if it wasn't for the union campaign, she would not have a job. Here, the regional commissioner accepted the fact that this statement was made. However, he pointed out that Schwartz was not an officer or agent of the union, and there was no basis for attributing the statement to the union. At best, the commissioner thought that Schwartz's statement was simply a private opinion.

The company further complained about remarks made by two employees during the campaign. These remarks were to the effect that the company had cut employee working hours because of a bonus that was given to a manager, that only 3% of the company's profits went to payroll, and that the Pittsburgh store could easily afford to pay $.50—$.75 per hour higher wages. Here, the regional director pointed out that the people in question were employees who supported the union campaign. The director found no basis for attributing these remarks to the union. The director characterized the employee statements as simply uninformed speculation, and concluded that any employee voter would readily recognize and discount assertions by co-workers, especially where there was no showing that the union was aware of or ratified the employees' conduct.

We agree with the regional director and the Board that the company's allegations are insufficient to warrant overturning the election or conducting an evidentiary hearing. In addition to the Board's above-outlined reasons for rejecting the company's claims, we note that the company at no time was precluded from making an effective reply to the alleged misrepresentations. The pre-election campaign was conducted for about a month prior to the election. As the Board notes in its brief, the company was not helpless to correct any misunderstanding.

B

■ In addition to the above-stated "campaign objections", the company also claimed that there was misconduct on election day. The employer presented two witnesses, Emmanuel Zimmerman, the company supervisor of stores for the greater Pittsburgh area, and Paul Christopher, merchandise manager. Zimmerman claimed that on the day of the election, union representative Jack Lewis came into the store and pointed at each of the employees present, but did not say anything to them. Zimmerman further testified that Lewis then walked over to where one employee was standing at the back of the store, grabbed his shoulder, and said "Hi, Bill", and started talking to him. Zimmerman said that he permitted the employee and Lewis to converse for about 30 seconds, after which time he instructed the employee to work in the front of the store. Christopher stated that on the day of the election he observed union representatives in the store on two occasions, and on each occasion they spoke to a single employee.

The regional director concluded that there was no objectionable conduct. The director pointed out that any conversation with employees occurred away from the polling area about three hours before the starting time of the election. There was no evidence that any of the remarks made by the union representatives were improper.

We have no problems with the Board's determination so far. The company has a stiff burden to show circumstances warranting the overturning of a union election. We agree with the Board that the circumstances presented in this case do not warrant additional inquiry at a hearing or overturning the election.

The final argument the company makes is that the Regional Director overlooked additional evidence supplied by company supervisor Zimmerman. This evidence shows that on the day of the election union agent Lewis, accompanied by company supervisor Zimmerman, visited each of the employees at the store. The purpose of this joint visit was to notify the employees that the polls were open. According to Zimmerman, when employees Kevin and Judy Wilson expressed uncertainty over whether they were going to vote, Lewis gave them a "look". Thereupon, both indicated that they would vote.

The company alleges coercive conduct. However, its own supervisor, Zimmerman, who was present at the scene, did not allege that any threatening or menacing conduct occurred. Accepting the company's assertions as true, there is no showing that Lewis coerced the Wilsons, or that he did more than register disapproval when they said they were undecided about voting. As the Board notes in its brief, Board elections would be fragile indeed if such conduct required that they be set aside. We must agree with the Board that the company's allegations do not warrant an evidentiary hearing.

## II

The company also makes a procedural objection. The company claims that the "record" before the Board was deficient because it did not include the affidavits uncovered during the Regional Director's investigation.

In several recent decisions this court has ruled that "the Board abuses its discretion by adopting the report of the Regional Director when the Regional Director fails to transmit to the Board the evidence relied upon by the Regional Director." *NLRB v. North Electric Co.,* 644 F.2d 580 (6th Cir. 1981), *citing NLRB v. Curtis Noll Corp.,* 634 F.2d 1027, 1029 (6th Cir. 1980). *See also Prestolite Wire Div. v. NLRB,* 592 F.2d 302 (6th Cir. 1979).

We find these authorities to be distinguishable. This Court has never retreated from its position in *NLRB v. Tennessee Packers, Inc.,* 379 F.2d 172 (6th Cir.), *cert. denied,* 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967) (Cecil, J.) that:

> It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. Mere disagreement with the Regional Director's reasoning and conclusions do[es] not raise "substantial and material factual issues." This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof. [Citations omitted.]

In the above-cited cases, this court found that the company's allegations required either a hearing, *NLRB v. Curtis Noll Corp., supra; Prestolite Wire Div. v. NLRB, supra,* or at least required the Board to "interpret . . . and giv[e] weight to the evidence developed by the Regional Director." *NLRB v. North Electric Co., supra* at 584. Our examination of the company's allegations in this case, outlined above in part I, convinces us that the company's allegations are not sufficient to require a remand to the Board to consider the additional affidavits. There are simply not sufficient substantial and material issues raised. *See Reichart Furniture Co. v. NLRB,* 649 F.2d

397 (6th Cir. 1981); *Randall, Burkart/Randall Div. v. NLRB*, 638 F.2d 957 (6th Cir. 1981); *Birmingham Ornamental Iron Co. v. NLRB*, 615 F.2d 661 (5th Cir. 1980); *Prestolite Wire Div. v. NLRB*, supra at 305–06 (citing cases). *See also Fotomat v. NLRB*, 634 F.2d 320 (6th Cir. 1980).

Courts should be wary of reversing the Board on procedural irregularities, absent evidence of prejudice. All such reversals do is cause further delays and add to the already unfortunate backlog of NLRB cases pending before this court. As Judge Cecil wrote in a related context:

> If a hearing is required to be held on all exceptions to an election or report of a Regional Director, it would unduly lengthen and prolong labor unrest, contrary to the very purposes of the National Labor Relations Act.

*NLRB v. Tennessee Packers, Inc.*, supra, 379 F.2d at 178. *See also NLRB v. Basic Wire Products, Inc.*, 516 F.2d 261, 266 (6th Cir. 1975) ("were we to mandate hearings every time a losing party cries 'foul,' we would frustrate the policy of the Act that calls for prompt certification of a properly victorious bargaining representative.")

Accordingly, the company's petition to review the Board's order is denied, and the Board's cross-petition for enforcement is granted.