KITCHEN FRESH, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 81–1635.

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1983.

Decided Aug. 19, 1983.

Rehearing Denied Oct. 26, 1983.

352

Ronald G. Ingham (argued), Clements, Ingham & Trumpeter, Chattanooga, Tenn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Lawrence Blatnik (argued), N.L.R.B., Washington, D.C., for respondent.

Before LIVELY and ENGEL, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

The petitioner, Kitchen Fresh, Inc., seeks review of an order of the National Labor Relations Board (Board) requiring it to bargain with the representative certified by the Board over the Petitioner's objections. The Board has cross-applied for enforcement of its order, issued as a result of its finding that the Petitioner violated Sec. 8(a)(1) and Sec. 8(a)(5) of the National Labor Relations Act.[1] We grant the petition for review and deny the Board's cross-application for enforcement.

The dispute underlying the Board's order concerns the Board's earlier decision to certify the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local # 515 (Union) as the exclusive bargaining representative of an appropriate unit of the Petitioner's employees. On November 23, 1979, the union filed a representation petition with the Board, and a stipulation was entered which defined the appropriate bargaining unit for purposes of the election. The election, which was held on January 17, 1980, was won by the union.[2]

The petitioner filed 11 objections to the conduct of the election.[3] The Board's Act-

1. The Board's decision and order in the unfair labor practice proceeding are reported at 258 NLRB 74 (1981).

2. Fifty-five employees voted for the Union and 41 employees voted against the Union. Three ballots were challenged. According to the representation petition, 225 voters belonged to the proposed bargaining unit.

3. Objections 5 and 8 were not actively pursued before the Board by the petitioner and have not been pursued in this court. The remaining objections allege that:

(1)
Teamsters Local 515 by its officers and/or agents, Eugene Logan and/or Ed Guffey, were

ing Regional Director, after conducting an administrative investigation, recommended that a hearing be held to resolve the issues raised by objection 6 and that the other objections should be overruled. On March 26, 1980, the petitioner filed timely exceptions to the Regional Director's report, asserting that a hearing was also necessary to resolve the issues raised by objections 1–4, 7, and 9–11. In its decision and order issued on July 9, 1980, the Board adopted the Regional Director's recommendations, ordered that a hearing be held on objection 6, and overruled the remaining objections.

On remand, a hearing was held on the issues raised in objection 6 on August 12, 1980; the hearing officer concluded that objection 6 was without merit and recommended that the union be certified. The petitioner filed exceptions to the hearing officer's recommendation with the Board. The Board, however, adopted the hearing officer's recommendation and certified the union on December 17, 1980.

Shortly after the Board certified the union as the exclusive bargaining agent for

the petitioner's employees, the union requested information regarding the employees in the bargaining unit. The petitioner refused to provide the information, maintaining that the union was improperly certified. In April, 1981, the General Counsel issued a complaint alleging that the Petitioner refused to bargain with the union in violation of Secs. 8(a)(1) and 8(a)(5) of the Act, 29 U.S.C. Secs. 158(a)(1) and (5). In its answer, the petitioner admitted that it had refused to bargain with the union, but asserted that the union was improperly certified. The Board granted summary judgment, concluding that the certification question had been previously litigated and that no new evidence had been presented in the unfair labor practice proceeding. In this court, the petitioner's arguments are directed solely to the certification issue: it argues that the Board's certification of the union was improper because the Board failed to hold a hearing on objections 1–4, 7, and 9–11 and because it concluded that the conduct complained of in objection 6 did not warrant a new election.

present at or about the polling area during the times the polls were open on January 17, 1980.

(2)

Teamsters Local 515 agents, officers, members, or employees acting on behalf of Teamsters Local 515, congregated at or about the polling area and campaigned actively and openly for Teamsters Local 515.

(3)

Teamsters Local 515 agents, officers, members, of employees acting on behalf of Teamsters Local 515, congregated at or about the polling area and by the very numbers and atmosphere created thereby caused voters to be intimidated and coerced in the exercise of their Section 7 rights.

(4)

Teamsters Local 515 agents, officers, members or employees acting on behalf of Teamsters Local 515 threatened employees with physical harm if they did not vote for the Teamsters.

(6)

Teamsters Local 515 agents, officers, members or employees acting on behalf of Teamsters Local 515 advised employees that unless they voted for the Teamsters, resulting in the Teamsters achieving collective bargaining status, the National Labor Relations Board would sell the union authorization cards to the employer, who would discharge all signers.

(7)

Teamsters Local 515 officials Ed Guffey and Eugene Logan threatened the physical well-being of management official(s) at the polling area at such times as the polls were still open.

(9)

Teamsters Local 515 agents, officers, members or employees acting on behalf of Teamsters Local 515, advised employees that those persons not adhering to the Union would be fired by the Teamsters bringing pressure on the Employer.

(10)

Teamsters Local 515 agents, officers, members of employees acting on behalf of Teamsters Local 515 openly secured authorization cards through fraudulent means including, but not limited to, signing an employee's name over objection and turned them into the National Labor Relations Board, thereby engendering in the employee's eyes an atmosphere of collusion between the Board and Teamsters Local 515.

(11)

All the above conduct, whether conducted by Teamsters Local 515 agents, officers, members, and/or employees acting on behalf of Teamsters Local 515 or not, was such as to create an atmosphere wholly incompatible for the conduct of an election in the Board mandated "laboratory conditions."

In objection 6, the petitioner alleged that union representatives or agents were responsible for circulating a rumor among the petitioner's employees that the petitioner would be able to purchase the authorization cards from the Board and discharge the signers if the union lost the election. The fact that this rumor circulated among the rank-and-file employees is not seriously disputed. The question is whether the union must be held responsible for the rumor [4] or, if the union was not responsible, whether the deleterious effect of the rumor had dissipated by the time of the election. *NLRB v. Bostik Division, USM Corp.*, 517 F.2d 971, 975 (6th Cir.1975). The Board found that the union was not responsible for the rumor and that the rumor had been adequately dispelled by the time of the election. These findings must be upheld if they are supported by substantial evidence in the record considered as a whole. *N.L.R.B. v. Bostik Division, USM Corp.*, 517 F.2d 971, 976 (6th Cir.1975).

The petitioner offers two bases for attributing responsibility to the union. First, it argues that Teamsters' organizer Eugene Logan repeated the rumor at several union meetings. Second, it asserts that Glenda Walsh, the nominal head of the in-plant-organizing committee, repeated the rumor and that Walsh's actions must be imputed to the union because of her status as head of the organizing committee. Clearly, responsibility for the rumor must be attributed to the union if either Logan, the Teamsters' organizer, or Walsh, acting as union agent, perpetuated the rumor. *See*

*Harlan # 4 Coal Co. v. NLRB*, 490 F.2d 117, 124 (6th Cir.1974) *cert. denied*, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974).

Logan's role in perpetuating the rumor was sharply contested before the Board. One of the petitioner's employees, Ms. Dale Kilgore, testified that Logan had repeated the rumor at an organizational meeting and that, in a phone conversation shortly before the election, Logan had said that the petitioner "might" be able to purchase the authorization cards if the Union lost the election. The Board's hearing officer did not credit this testimony. In our view, the Board's credibility determination was manifestly correct. Kilgore's testimony was uncorroborated and was inconsistent with the testimony of several other witnesses.[5] We believe that substantial evidence supports the Board's finding that Logan did not perpetuate the rumor.

With regard to Walsh, the Board concluded that she had repeated the rumor to other employees, but that the Union could not be held responsible for Walsh's remarks because she was not an agent of the Union. The petitioner attacks the latter finding, arguing that Walsh must be treated as an agent of the Union because of her position with the organizing committee.[6] It relies upon several cases which have held the union responsible for the conduct of employees who were not members or paid agents of the union. *E.g., P.P.G. Industries, Inc. v. NLRB*, 671 F.2d 817 (4th Cir.1982); *NLRB v. Georgetown Dress Corp.*, 537 F.2d 1239

---

**4.** The Board seems to concede that a new election would be necessary if the Union is responsible for perpetuating the rumor. We agree. If the union had given credibility to this rumor, the coercive effect of the rumor would be greatly enhanced. *Cf. NLRB v. Georgetown Dress*, 537 F.2d 1239, 1242 (4th Cir.1976) (greater weight is to be accorded conduct of union agents than actions of rank-and-file employees).

**5.** The Board's hearing officer made exceptionally detailed credibility findings. The hearing officer credited Logan's testimony, *see* note 8, *infra*, because the testimony was corroborated by three separate witnesses. Conversely, Kil-

gore's uncorroborated testimony was not credited because she "was confused and distraught in her testimony regarding Logan's role in perpetuating the rumor".

**6.** Walsh was one of the principals of the in-plant organizing committee. She characterized herself as the "leader" of the committee. She also testified that she circulated authorization cards and that on several occasions, she organized meetings between Logan and the rank-and-file employees. Logan described Walsh as a "contact person," who was responsible for disseminating union information and for rebutting rumors or statements circulating within the plant.

(4th Cir.1976); *NLRB v. Urban Telephone Co.,* 499 F.2d 239 (7th Cir.1974).

▉ Generally, a union is not responsible for the acts of an employee, unless the employee is an agent of the union. *See, e.g., NLRB v. Georgetown Dress Corp.,* 537 F.2d 1239, 1244 (4th Cir.1976). To determine whether an employee such as Walsh is an agent of a union, the question must be analyzed within the framework of common law agency principles. *NLRB v. Local # 64, Falls City Council,* 497 F.2d 1335, 1336 (6th Cir.1974). Common law principles of agency, however, are not to be rigidly applied. 29 U.S.C. Sec. 152(13); *Worley Mills, Inc. v. NLRB,* 685 F.2d 362, 366 n. 2 (10th Cir.1982). The question whether an employee is an agent is a question of fact, *id.* at 366; the party seeking to prove that an employee is a union agent must show that the union "instigated, authorized, solicited, ratified, condoned or adopted" the employee's actions or statements. *NLRB v. Miramar of California,* 601 F.2d 422, 425 (9th Cir.1979). *See Worley Mills, Inc. v. NLRB,* 685 F.2d at 366. An employee's conduct may also be attributed to the union if the objector can demonstrate that the union has clothed the employee with apparent authority to act on behalf of the union. *E.g. NLRB v. Advanced Systems, Inc.,* 681 F.2d 570, 576 (9th Cir.1982); *NLRB v. Georgetown Dress Corp.,* 537 F.2d 1239, 1244 (4th Cir.1976) ("we think that the union is chargeable with the misdeeds under the principle of apparent authority."). *See NLRB v. Urban Telephone Corp.,* 499 F.2d 239, 243–44 (7th Cir.1974) (Employees conduct was attributable to the union "because of his close connection with the union and the union's failure to repudiate his threats"). At the minimum, the party seeking to hold the Union responsible for an employee's conduct based upon the theory of apparent authority must show that the union cloaked the employee with sufficient authority to create a perception among the rank-and-file that the employee acts on behalf of the union, *e.g., NLRB v. Georgetown Dress Corp.,* 537 F.2d at 1244; *NLRB v. Urban Telephone,* 499 F.2d at 244, and that the union did not disavow or repudiate the employee's statements or actions. *NLRB v. Advanced Systems, Inc.,* 681 F.2d at 576; *NLRB v. Georgetown Dress Corp.,* 537 F.2d at 1244; *NLRB v. Urban Telephone,* 499 F.2d at 244.

▉ In light of these principles, we believe that substantial evidence supports the Board's finding that Walsh's conduct may not be attributed to the Union. The evidence clearly indicates that Walsh held no formal position with the Union. Thus, if the Union is to be held responsible for Walsh's actions, the Petitioner must show that Walsh appeared to speak on behalf of the Union, and that the Union failed to repudiate Walsh's statements. The credited evidence, however, does not support such a theory. Although the evidence indicates that Walsh was clothed with some authority to act on behalf of the Union,[7] substantial evidence supports a conclusion that the Union disavowed the rumor.[8] Because the evidence does not indicate that the rumor was perpetuated by any person with actual or apparent authority to act on behalf of the union, we agree that responsibility for the rumor cannot be attributed to the union.

▉ Because the rumor cannot be attributed to the union, the petitioner must show, in order to prevail on objection 6, that the rumor created an atmosphere that rendered a free expression of ideas impossible. *NLRB v. Bostic Division, USM Corp.,* 517

---

**7.** *See* note 6, *supra. Cf. NLRB v. Urban Telephone,* 499 F.2d 239, 241 (7th Cir.1974) ("Contact" man held to be union agent); *NLRB v. Georgetown Dress Corp.,* 537 F.2d 1239, 1243 (4th Cir.1976) (members of organizing committee responsible for soliciting signatures on authorization cards and organizing union meetings). *See also Season-All Industries v. NLRB,* 654 F.2d 932, 938–39 (3rd Cir.1981) (agency is a factual question).

**8.** The credited evidence clearly indicates that Logan stated that the authorization cards could not be purchased by the company. Moreover, the union prepared a "fact sheet" indicating that the authorization cards were strictly confidential. According to Logan, these leaflets were distributed during the campaign.

F.2d 971, 975 (6th Cir.1975). *See Worley Mills, Inc. v. NLRB,* 685 F.2d at 367; *EDS–IDAB, Inc. v. NLRB,* 666 F.2d 971, 975 (5th Cir.1982). The Board found that the petitioner held several meetings attended by all the unit employees; at these meetings, the petitioner's president assured the rank and file that it could not buy the authorization cards and, in any event, that none of the signers would be discharged. Moreover, the credited evidence indicates that union organizer Eugene Logan assured the employees that the rumor was without substance. Based on these authoritative statements, the Board concluded that the deleterious effect of the rumor had been adequately dispelled; we believe that substantial evidence supports the Board's conclusion.[9]

The Regional Director recommended that the remainder of the Petitioner's objections be overruled without a hearing; the Board adopted the Regional Director's recommendations and overruled objections 1–4, 7, and 9–11 because it found that "the Employer's exceptions raise no material issues of fact or law ...." The Petitioner asserts that the Board erred by certifying the Union without holding a hearing on the remaining objections because the objections contained factual assertions which required that the results of the election be set aside.

Initially, we must address a very common procedural problem in this type of proceeding. Consistent with the Board's policy, the affidavits collected by the Regional Director from both the petitioner and the union were not forwarded to the Board. Thus, the Board did not have the full administrative record before it when it adopted the Regional Director's recommendations. This court has consistently condemned this policy because neither the Board nor this court can adequately review the Regional Director's decision to deny a hearing if these affidavits are not made

available. *E.g., Eliason Corp. v. NLRB,* 688 F.2d 22 (6th Cir.1982); *Kusan Mfg. Co. v. NLRB,* 673 F.2d 150 (6th Cir.1982); *ATR Wire and Cable Co. v. NLRB,* 671 F.2d 188 (6th Cir.1982); *NLRB v. North Electric Co., Plant No. 10,* 644 F.2d 580 (6th Cir.1981); *NLRB v. Curtis Noll Corp.,* 634 F.2d 1027 (6th Cir.1980); *Prestolite Wire Division v. NLRB,* 592 F.2d 302 (6th Cir.1979). *See NLRB v. Allis-Chalmers Corp.,* 680 F.2d 1166 (7th Cir.1982); *NLRB v. Klingler Electric Corp.,* 656 F.2d 76, 84 n. 9 (5th Cir. 1981); *NLRB v. Belcor, Inc.,* 652 F.2d 856 (9th Cir.1981); *NLRB v. Cambridge Wire Cloth Co., Inc.,* 622 F.2d 1195 (4th Cir.1980). This court has concluded that "it is an abuse of discretion for the Board to adopt the report of the Regional Director without reviewing the documentary evidence relied upon by the Regional Director." *NLRB v. North Electric Co., Plant No. 10,* 644 F.2d 580, 584 (6th Cir.1981). This error may serve as a basis for denying enforcement, however, only if the exceptions present substantial factual issues, *Revco D.S. Inc. v. NLRB,* 653 F.2d 264, 267 (6th Cir.1981); if the objector's allegations would not warrant a new election even if true, the objector has not been prejudiced by the inadequate record. *Id.* at 268.

■ This case presents a new variation on this regrettably familiar theme. The petitioner does not appear to have complained to the Board during the representation proceeding about the Board's failure to consider the entire record relied upon by the Regional Director. The Board now asserts that we cannot consider this issue, relying upon 29 U.S.C. Sec. 160(e) which provides that an objection not made before the Board cannot be considered by a court of appeals "unless this failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Although some courts have excused the fail-

---

9. Unquestionably, some rank-and-file employees feared that they would be discharged because they had signed authorization cards. The statements of the petitioner and the union, *see* note 8, *supra,* however, largely calmed these fears. In light of the Board's considerable expertise in evaluating coercive effect of rumors such as this, we believe that substantial deference should be accorded the Board's factual findings. Consequently, we are unwilling to re-evaluate the evidence offered regarding the effect of the rumor and the extent to which the statements of the company and the Union served to lessen the rumors effect.

ure to raise the question of inadequacy of the record, *e.g., NLRB v. Eskimo Radiator Mfg. Co.,* 688 F.2d 1315, 1318 (9th Cir.1982); *NLRB v. Advanced Systems,* 681 F.2d 570, 574–75 (9th Cir.1982), this court has refused to consider the inadequacy of the record when the question was not raised before the Board. *See NLRB v. Chillemi,* 652 F.2d 605 (6th Cir.1980). We believe, however, that any objection before the Board would be futile in light of the Board's persistent refusal to transmit the full administrative record despite repeated requests by parties and constant prodding by the courts. In our view, the futility of such an objection amounts to an "extraordinary circumstance" which excuses the petitioner's failure to object to the state of the record.

This circuit has consistently required the Board to consider the entire administrative record, including affidavits, compiled by the Regional Director.[10] Several other circuits have condemned the Board's practice of accepting the Regional Director's recommendations without reviewing the entire record.[11] The Board, however, has also been

consistent; it has unequivocally, but "respectfully", refused to follow these precedents. *Southwest Color Printing Corp.,* 247 NLRB 917 (1980) ("Respondent cites the Sixth Circuit's decision in *Prestolite Wire Division [v. NLRB,* 592 F.2d 302 (6th Cir. 1979) ] as support for its contention that the Board's adoption of the Regional Director's Report . . . without having the entire investigative record before it, constitutes an abuse of discretion and denial of due process. We [the Board] disagree with the Sixth Circuit's holding and respectfully decline to follow it."). Indeed, the Board has refused to follow the *Prestolite* rule in cases which have arisen in this circuit. *Eliason Corporation,* 256 NLRB 167 (1981), *enf. denied,* 688 F.2d 22 (6th Cir.1982). In light of the Board's persistent and continued refusal to cause the entire administrative record to be transmitted in these cases, and its unwillingness to apply the law of this circuit in cases arising within this circuit,[12] we can perceive no reason to require the Petitioner to raise the issue before the Board. The futility of any objection by the petitioner is apparent.

---

**10.** *See Eliason Corp. v. NLRB,* 688 F.2d 22 (6th Cir.1982); *NLRB v. Fuelgas Co., Inc.,* 674 F.2d 529 (6th Cir.1982); *Kusan Mfg. Co. v. NLRB,* 673 F.2d 150 (6th Cir.1980); *ATR Wire Cable Co. v. NLRB,* 671 F.2d 188 (6th Cir.1982); *NLRB v. Forest City Enterprises, Inc.,* 663 F.2d 34 (6th Cir.1981); *Revco D.S. v. NLRB,* 653 F.2d 264 (6th Cir.1981); *Reichart Furniture Co. v. NLRB,* 649 F.2d 397 (6th Cir.1981); *NLRB v. North Electric, Plant 10,* 644 F.2d 580 (6th Cir.1981); *Randall Burkhart Randall Div. of Textron v. NLRB,* 638 F.2d 957 (6th Cir.1981); *NLRB v. Curtis Noll Corp.,* 634 F.2d 1027 (6th Cir.1980); *Fotomat Corp. v. NLRB,* 634 F.2d 320 (6th Cir.1980); *NLRB v. Pinkerton's, Inc.,* 621 F.2d 1322 (6th Cir.1980); *NLRB v. RJR Archer, Inc.,* 617 F.2d 161 (6th Cir.1980); *Prestolite Wire Division v. NLRB,* 592 F.2d 302 (6th Cir.1979).

**11.** *E.g., NLRB v. Allis-Chalmers Corp.,* 680 F.2d 1166 (7th Cir.1982); *NLRB v. Klingler Elec. Corp.,* 656 F.2d 76 (5th Cir.1981); *NLRB v. Belcor, Inc.,* 652 F.2d 856 (9th Cir.1981); *NLRB v. Cambridge Wire Cloth Co., Inc.,* 622 F.2d 1195 (4th Cir.1980).

**12.** The Board's refusal to apply the *Prestolite* rule in cases arising in Michigan, Ohio, Kentucky and Tennessee is particularly disturbing. Although the Board is charged with the respon-

sibility of formulating national labor policy, the courts bear the final responsibility for interpreting the labor laws. *Allegheny General Hospital v. NLRB,* 608 F.2d 965, 970 (4th Cir. 1979). *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); the Board is bound to apply the law of the circuit in which a case arises. *PPG Industries, Inc. v. NLRB,* 671 F.2d 817, 823 n. 9 (4th Cir.1982); *Ithaca College v. NLRB,* 623 F.2d 224, 228–29 (2nd Cir.) *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Mary Thompson Hospital, Inc. v. NLRB,* 621 F.2d 858, 862 (7th Cir.1980); *NLRB v. Gibson Products Co.,* 494 F.2d 762, 766 (5th Cir.1974). "We do not expect the Board or any other litigant to rejoice in all the opinions of this Court . . . . However, the Board cannot, as it did here, choose to ignore the decision of this court as if it had no force or effect. Absent reversal, the decision is the law which the Board must follow." *Ithaca College v. NLRB,* 623 F.2d at 228.

In our view, the Board's unwillingness to apply the *Prestolite* rule in cases arising within this circuit underscores the futility of any objection. The Board's unwillingness to adhere to the doctrine of *Marbury v. Madison, see Allegheny General Hospital v. NLRB,* 608 F.2d at 970, clearly indicates that the Board will not abandon its position at the request of the petitioner.

358

Moreover, excusing the petitioner's failure to raise an objection in this instance is consistent with the policy underpinning 29 U.S.C. Sec. 160(e). The waiver rule of Sec. 160(e) "affords the Board the opportunity to bring its labor relations expertise to bear on the problem so that we may have the benefit of its opinion when we review its determinations." *NLRB v. Allied Products Corp.,* 548 F.2d 644, 653 (6th Cir.1977). *See Marshall Field & Co. v. NLRB,* 318 U.S. 253, 256, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943). The Board has had the benefit of persuasive and well-reasoned opinions of several courts of appeal; it has steadfastly refused to modify its policy even when its policy is not consistent with the law of the circuit in which the particular case arose. It has clearly stated its reasoning for adhering to its policy. *See Summa Corp.,* 265 NLRB 46 (1982). Thus, the policies underlying Sec. 160(e) would not be promoted by requiring the petitioner to object before the Board in this instance. Because of the anomalous circumstances in this case,[13] we see no reason to require the petitioner to ask the Board to abandon a position which it has steadfastly maintained despite a decidedly cool reception by the courts of appeal; such an objection would amount, in this instance, to an exercise in futility, and it would not serve the salutory purpose of Sec. 160(e). Thus, we believe that the extraordinary circumstances present in this instance permit us to consider the Petitioner's objection to the Board's failure to consider the complete administrative record.

When the Board fails to consider or transmit the complete administrative record, we cannot ascertain whether the allegations are supported by the evidence gathered in the administrative investigation; thus, we must assume the truth of the employer's undocumented allegations and remand for a hearing if the allegations raise substantial issues which, if proven, would warrant a new election.[14] *NLRB v. North Electric Co., Plant No. 10,* 644 F.2d 580, 582 (6th Cir.1981). *See NLRB v. Tennessee Packers, Inc.,* 379 F.2d 172, 177 (6th Cir.1967) (hearing on objections is required only if substantial factual questions are raised by objections). In our view, several of the petitioner's objections, when viewed most favorable to its position, are sufficiently substantial to require a hearing.

In objections one and seven, the petitioner alleges that Teamster's organizer Logan and another union employee, James Roberts, loitered in a foyer through which voters had to pass to reach the polling room. The petitioner also alleges that the foyer was posted with the Board's standard election notice which prohibits electioneering or loitering during the election. While in the foyer, Roberts apparently asked whether one of the non-bargaining unit employees was "one of the bosses we got [sic] to straighten out or shut up?" This remark

13. We emphasize the narrowness of our holding that the futility of an objection may, in some instances, be an "extraordinary circumstance" which would excuse the failure to make an objection. Generally, an objection would be futile only when the Board has unequivocally rejected a party's position by expressly refusing to follow the authority or line of authorities relied upon by that party.

In this sense, *NLRB v. Chillemi,* 652 F.2d 605 (6th Cir.1980) is readily distinguished. The Board's decision in *Chillemi* was issued in April, 1978. At that time, *Prestolite* had not been decided and, of course, the Board had not refused to follow this court's decision in that case. Thus, a timely objection before the Board would not have been futile (although, in retrospect, it might have been fruitless); the Board had simply not considered the question.

In contrast, the Board had already rejected our position in *Prestolite, Southwest Color Printing Corp., supra,* when this case was first appealed to the Board (March, 1980). Consequently, we believe that the futility question was not presented in *Chillemi.*

14. *See, e.g., Eliason Corp. v. NLRB,* 688 F.2d 22, 23 (6th Cir.1982) (per curiam). Essentially, the Board's failure to forward the administrative record does not relieve the objector of its burden to demonstrate that factual issues exist. *E.g. Reichart Furniture Company v. NLRB,* 649 F.2d at 398. Instead, the Board's omission merely relieves the objector of its general obligation to provide detailed factual support for his assertions and requires this court to give the objector the benefit of all favorable inferences.

was made in the presence of several employees.

In addition to the presence of the union officials, the Petitioner also asserts that a number of pro-union employees, ranging in number from 8 to 30, congregated in the foyer during the last hour of the election and that these employees engaged in electioneering activity which was directed at other employees who were waiting in line (in the foyer) to vote. Glenda Walsh, an alleged agent of the union, was apparently one of the pro-union employees engaged in electioneering in the foyer.

Clearly, these allegations raise material questions of fact: the agency status of Walsh, the coercive effect of the electioneering upon the employees waiting to vote, and the effect of the presence of Logan and Roberts in the foyer. Moreover, these factual issues are substantial; if Walsh is found to be an agent of the union, or if Logan and Roberts engaged in any conversation with employees who were waiting to vote, then a new election must be held. *Milchem, Inc.,* 170 NLRB 362 (1968) (new election must be held when prolonged conversations occur between representative of party and voter). *See NLRB v. Advanced Systems, Inc.,* 681 F.2d 570, 576 (9th Cir. 1982) (applying *Milchem* rule to employee who is agent of union). *Cf. Season-All Industries v. NLRB,* 654 F.2d 932, 938–39 (3rd Cir.1981) (agency is factual question requiring hearing). Moreover, electioneering by mere rank-and-file employees may be so egregious that a new election is warranted. *NLRB v. Carroll Contracting and Ready-Mix,* 636 F.2d 111, 113 (5th Cir.1981) (must hold new election if employee-electioneer

disrupts voting procedure). *See Worley Mills, Inc. v. NLRB,* 685 F.2d 362, 367 n. 4 (10th Cir.1982). Thus, we believe that objections 1, 7, 2, and 3 present substantial and material factual questions which warrant a hearing.

Moreover, we believe that objection 4 is sufficiently serious to require a hearing. In objection 4, the petitioner asserts that alleged union agent Glenda Walsh indirectly threatened an employee. Specifically, Walsh told the employee's sister (who was also an employee) that she "had better straighten her sister out or something would happen to me or her." This threat was repeated by the sister to the employee in the presence of a third employee. Moreover, the petitioner asserts that this threat was carried out: the tires of the employee to whom the threat was addressed were later slashed. The petitioner argues that the threat was serious and that it would have had a substantial effect upon the election if widely disseminated, especially if Walsh is found to be an agent of the Union in this context. *E.g., Certain Teed Products v. NLRB,* 562 F.2d 500, 510–11 (7th Cir.1977) (less weight accorded to misconduct of employees than to misconduct of union agents). We agree that a hearing should be held to determine whether the threat was made and whether the incident was widely disseminated throughout the plant.[15]

Consequently, the Board's cross-application for enforcement of its order is denied, the Petitioner's application for review of the Board's order is granted, and this matter is remanded for a hearing on objections 1, 2, 3, 4, and 7.[16]

---

**15.** Although this threat may not be sufficient to warrant a new election when considered in isolation, *e.g. NLRB v. Bostik Div., USM Corp.,* 517 F.2d at 975, we believe that the cumulative effect of the rumor, the foyer incidents, and this threat may be sufficient to warrant a new election. *E.g. EDS—IDAB, Inc. v. NLRB,* 666 F.2d 971, 975 (5th Cir.1982).

**16.** The remaining objections are without merit. Objection 10 alleges that some authorization card signatures were fraudulently obtained. The Board properly concluded that such conduct, even if true, did not warrant a hearing

because a sufficient number of non-fraudulent cards were submitted to require an election. Objection 11 alleges that a "laboratory atmosphere" was absent during the course of the campaign. In our view, this issue will be addressed on remand when the Board considers whether the cumulative effect of the other matters warrants a new election. *See* note 15, *supra.*

In Objection 9, the petitioner alleges that Union Organizer Logan threatened employees who did not sympathize with the Union, indicating that the Union would seek their dismiss-

al if it won the election. The Board concluded that the threat was not within the power of the union to carry out and, thus, should be evaluated as campaign propaganda. Certainly, conduct of this nature should be discouraged; we agree, however, that employees would discount such threats as propaganda. Certainly, an employee would have to be extremely gullible to believe that, after a hard fought organizing campaign, the petitioner would discharge its adherents at the union's request.