COLQUEST ENERGY, INC., Petitioner/Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner,**

**United Mine Workers of America, AFL–CIO, Intervenor.**

Nos. 91–5622, 91–5763.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1992.

Decided June 2, 1992.

Herbert S. Sanger, Jr. (briefed), Wagner, Myers & Sanger, Knoxville, Tenn., and Roger K. Quillen (argued and briefed), Fisher & Phillips, Atlanta, Ga., for Colquest Energy, Inc.

Aileen A. Armstrong (argued), Deputy Associate Gen. Counsel, Peter Winkler (briefed), N.L.R.B., Office of Gen. Counsel, Washington, D.C., Martin M. Arlook, Director, N.L.R.B., Region 10, Atlanta, Ga., Rosa Wiener, N.L.R.B., Washington, D.C., for N.L.R.B.

Robert H. Stropp, Christy Hoffman (briefed), United Mine Workers of America, Washington, D.C., John L. Quinn, Claudia Pearson (argued), Longshore, Nakamura & Quinn, Birmingham, Ala., for United Mine Workers of America, AFL–CIO.

Before KENNEDY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This matter comes before the court on petition of Colquest Energy, Inc. [Colquest] to review an order of the National Labor Relations Board [NLRB or Board] issued May 15, 1991. The NLRB has cross-petitioned for enforcement of the same order. The court has jurisdiction of this case pursuant to Sections 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. §§ 160(e) and (f). Colquest, a Tennessee corporation engaged in the business of mining and selling coal, has its facilities in Clairfield, Tennessee. For the reasons stated below, we grant Colquest's petition for review and deny the NLRB's cross-petition for enforcement of its order.

## I. PROCEDURAL POSTURE AND FACTS

On May 18, 1990 the United Mine Workers of America, AFL–CIO [UMWA] filed a representation petition with the NLRB seeking certification as the collective bargaining representative of Colquest's production and maintenance employees. On June 19, 1990 the NLRB conducted a secret ballot representation election. Of the 75 votes cast, 39 were for representation and 30 were against representation by the UMWA; six ballots were challenged.

Colquest filed with the Regional Director four objections to the conduct of the election. For the sake of clarity, we will discuss Colquest's specific factual allegations as we address the company's objections *seriatim*. Colquest claimed that UMWA agents interfered with the ability of Colquest's employees to make a free choice in the representation election: 1) by electioneering at the polls while employees were standing in line to vote; 2) by promising voters economic benefits in exchange for votes; 3) by threatening certain voters; and 4) by promising to waive union fees for those employees who were willing to acknowledge their support of the UMWA prior to the election.

The NLRB's Regional Director conducted a confidential investigation of Colquest's claims. On August 31, 1990 the Regional Director issued a report recommending that Colquest's objections be overruled. Colquest filed with the NLRB timely exceptions to the Regional Director's recommendations. On January 18, 1991 the NLRB issued an order adopting the Regional Director's recommendations, and certified the UMWA as the exclusive bargaining representative of Colquest's production and maintenance employees.

Colquest did not comply with the NLRB's order; the company refused to bargain with the UMWA. Colquest argued before the Board that the NLRB's certifica-

tion of the UMWA was improper because the election was improperly conducted. Colquest demanded an evidentiary hearing in order to demonstrate that the conduct of certain individuals prevented a fair representation election. The UMWA filed an unfair labor practice charge against Colquest. On May 15, 1991 the NLRB issued a decision and order in which the Board found that Colquest had violated 29 U.S.C. §§ 158(a)(1) and (5) by refusing to bargain with the UMWA. Because the NLRB determined that Colquest neither presented special circumstances that would require the Board to reexamine its prior decision nor presented newly discovered evidence, the NLRB found for the UMWA and refused to grant Colquest an evidentiary hearing. Colquest petitions this Court to review the NLRB's decision; the NLRB cross-petitions for enforcement of its order.

At oral argument counsel for the NLRB was reminded of the fact that the Board had failed to file a portion of the record on appeal. Specifically, the NLRB had not filed employee affidavits that were attached to Colquest's exceptions to the Regional Director's Report on Objections. We invited counsel for the NLRB to move to furnish the previously omitted portions of the record; the NLRB's counsel made the motion which was granted on February 25, 1992.

## II. DISCUSSION

*Was an evidentiary hearing required?*

■ We recognize that the NLRB has broad discretion in resolving representation disputes. *NLRB v. Basic Wire Products, Inc.*, 516 F.2d 261, 263 (6th Cir.1975). The function of this Court sitting in review of an NLRB decision is to ascertain whether the Board abused its discretion in resolving the dispute. *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327–328, 91 L.Ed. 322 (1946). The NLRB abuses its discretion if it refuses to grant an evidentiary hearing when there exist material issues of fact concerning whether a fair election was held. *See Prestolite Wire Div. v. NLRB*, 592 F.2d 302, 306–307 (6th Cir. 1979). Furthermore, the NLRB abuses its

discretion if it adopts the report of a Regional Director without reviewing the documentary evidence relied on by the Director. *NLRB v. North Elec. Co., Plant No. 10*, 644 F.2d 580, 584 (6th Cir.1981). Nevertheless, even if the Board has abused its discretion in not considering the entire record before the Regional Director, we do not remand a case for an evidentiary hearing before the NLRB unless an employer's objections and supporting proofs indicate that there exist material, factual disputes with the Regional Director's report which, if proved, demonstrate that the election should be overturned. *Id.* We have reached this conclusion to prevent a disgruntled, losing party from employing undue dilatory tactics in an effort to invalidate the results of a representation election. *See Revco D.S., Inc. v. NLRB*, 653 F.2d 264, 268 (6th Cir.1981).

■ Because it is the party that seeks to overturn the results of the representation election, Colquest bears the burden of demonstrating that there exist material issues of fact concerning whether the objectionable conduct affected the results of the election. *See NLRB v. Shrader's, Inc.*, 928 F.2d 194, 196 (6th Cir.1991). Specific evidence that the unlawful acts occurred is required; it must establish that the NLRB could reasonably infer that the conduct interfered with the voters' exercise of free choice. *Id.; cf. Tony Scott Trucking, Inc. v. NLRB*, 821 F.2d 312, 316 (6th Cir.1987), *cert. denied*, 484 U.S. 896, 108 S.Ct. 230, 98 L.Ed.2d 188 (1987). In other words, in order to prevail before this Court Colquest must make out a *prima facie* case for invalidating the election.

According to its own regulations, the NLRB must grant an evidentiary hearing on objections to conduct affecting the results of an election whenever the objections "raise substantial and material issues." 29 C.F.R. § 102.69(d). Colquest contends that each of its four objections raises such issues. In addition, Colquest contends that it has offered proof in support of each of its objections; Colquest maintains it has submitted affidavits from employees that

demonstrate facts contrary to the Regional Director's findings.

*Colquest's First Objection: Electioneering at the Polls*

■ Colquest contends that UMWA supporters and/or agents engaged in electioneering at the polls while voters were standing in line to vote. The affidavits provided by Colquest's employees, Sam Perry and Jerry Weaver, state that on election day union supporters, wearing union hats and insignias, stood near the line to the polls and urged voters to protect their jobs with a vote for the union. In addition, the affidavits indicate that the UMWA's alleged election observer, David Hatfield, entreated voters to vote for the union telling them that this was the only way he could get back his job.

Colquest argues that such electioneering tactics fall within the prohibitions established by this Court in *Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351 (6th Cir.1983). The employer in *Kitchen Fresh* alleged that union employees made intimidating comments as they loitered in an area immediately outside the polling room. Furthermore, the employer alleged that between eight and thirty pro-union employees (including a union agent) congregated in this same area and attempted to rally support for the union. The court held that these allegations raised material issues of fact that required a hearing. The court in *Kitchen Fresh* cited with approval a Fifth Circuit decision in which the court held that electioneering by mere rank and file employees may be so egregious as to warrant a new election. *Kitchen Fresh*, 716 F.2d at 358–359, *citing NLRB v. Carroll Contracting and Ready–Mix*, 636 F.2d 111, 113 (5th Cir. Unit B Feb. 1981). Colquest argues it is entitled to a hearing in order to demonstrate that union agents were responsible for the electioneering, or to demonstrate that the electioneering was so outrageous that it made it impossible to conduct a fair and impartial election.

The NLRB and the UMWA argue that any electioneering that occurred at Colquest's Clairfield facility was insufficiently serious to warrant setting aside the election. According to its decision in *Milchem, Inc.*, 170 N.L.R.B. 362 (1968), the NLRB will set aside an election on grounds of unfair electioneering if a party demonstrates the occurrence of "prolonged conversations between representatives of any party to the election and voters waiting to cast ballots...." The NLRB and UMWA contend that wearing union hats or other insignias does not establish union agency nor does it cloak the wearer with apparent union authority. The NLRB and the UMWA assert that Colquest has produced no evidence to indicate that the alleged electioneers were representatives of the union. Furthermore, the NLRB and the UMWA contend that this circuit has recognized that neither the union nor the employer can control the activities of third parties. In *Tony Scott Trucking*, 821 F.2d at 316, this Court held that a third party's objectionable conduct can only invalidate an election if the misconduct "created an atmosphere of fear and reprisal such as to render free expression of choice impossible." The NLRB and the UMWA contend that the remarks made outside the polls were short, unthreatening statements; they argue these comments consisted merely of impulsive remarks uttered by fellow employees at the end of a campaign. Finally, the NLRB and the UMWA argue that Colquest has provided insufficient evidence to demonstrate that the union supporters' conduct created an atmosphere of fear and reprisal.

■ We find the NLRB's and UMWA's arguments persuasive. The party that objects to the election must provide specific evidence showing not only that the unlawful electioneering occurred, but also that the electioneering interfered with the voter's exercise of free choice to such an extent that the conduct materially affected the results of the election. *Tony Scott Trucking*, 821 F.2d at 316. The affidavits produced by Colquest do not depict egregious examples of electioneering tactics. Nor do the affidavits demonstrate evidence that the union supporters' electioneering tactics interfered with any voter's exercise of free choice. Therefore, we hold that the

electioneering to which Colquest objected was not sufficiently coercive to create an atmosphere of fear and reprisal to thereby render a free expression of choice impossible. Accordingly, we conclude that Colquest is not entitled to an evidentiary hearing on its first objection.

### Colquest's Second Objection: Promises of Economic Benefits

■ Colquest contends that the UMWA promised eligible voters economic benefits in exchange for votes. Colquest asserts the company presented evidence that the UMWA promised free legal representation to employees for work-related problems. Colquest produced a flyer distributed by the UMWA to Colquest's employees that did not indicate that free legal representation was offered to all union members. Colquest argues that the promises of free legal representation could have been construed as pertaining only to employees who voted for the union. Consequently, Colquest maintains these promises constituted economic inducements to employees that aided a union election victory. The employer argues that the holding in *NLRB v. Madisonville Concrete, Inc.*, 552 F.2d 168 (6th Cir.1977), requires this Court to deny enforcement of the NLRB's bargaining order in the case *sub judice*. In *Madisonville Concrete* the court refused to enforce a bargaining order because it found that the election had been tainted by unlawful economic inducements; specifically, prior to the election a union attorney appeared in court at no charge for a voting employee who had a parking violation.

■ We conclude that the *Madisonville Concrete* decision is inapposite. We agree with the NLRB's argument that no hearing is required on this objection. A union is free to promise to employees a benefit established for union members as long as receipt of the benefit is not conditioned on the recipient's demonstration of pre-election support for the union. The key to the validity of the union's promises is that the promises be made to all employees without concern for whether or not they demonstrate support for the union during the

election process. *Cf. Moulded Acoustical Products, Inc. v. NLRB*, 815 F.2d 934, 937 (3d Cir.1987), *cert. denied*, 484 U.S. 925, 108 S.Ct. 286, 98 L.Ed.2d 247 (1987). Colquest has not produced evidence which establishes that the benefits promised by the UMWA were available only to union supporters or that benefits such as free legal representation for work-related disability claims were granted to voting employees in exchange for support. Consequently, we hold that the NLRB is not required to grant Colquest an evidentiary hearing on its second objection.

### Colquest's Third Objection: Threats to Employees

■ Colquest contends that UMWA agents and/or supporters directed serious threats at its employees in the weeks prior to the representation election. Colquest contends that one of its employees, Ricky Foust, was a union bargaining unit member, a member of the in-plant union organizing committee, and a "union steward". Colquest claims that alleged union agent Foust threatened to burn down an eligible voter's house for refusing to sign a union authorization card. Among other threats to the same voter, Colquest claims Foust said: "You sit on the side of the road waiting for a ride [and] it is awfully dark down there[;] things could happen," and "this holler could be filled full of dynamite." Colquest maintains that several employees knew that Foust had threatened a fellow voter.

Furthermore, Colquest claims that another in-plant union organizer, Delbert Buckner, threatened another eligible voter saying that if he did not change his mind about the union, some one could change it for him. The NLRB's Regional Director, who conducted an investigation, determined that no hearing was required because the conduct about which Colquest complained did not warrant setting aside the election. The Director determined that no evidence demonstrated that Foust and Buckner were agents of the UMWA. The Director further noted that no evidence of actual violence or coercive conduct existed. Thus,

the Director dismissed as meritless Colquest's objection that the threats created a coercive environment in which a fair election could not have been conducted. The NLRB agreed with the Regional Director concluding that Colquest was not entitled to a hearing.

We disagree with the NLRB's conclusions. We recognize that this Court has previously held that generally a union is not responsible for the acts of an employee, unless the employee is an agent of the union. *Kitchen Fresh*, 716 F.2d at 355. Thus, the UMWA does not automatically assume responsibility for Foust's and Buckner's actions. Nevertheless, in the same opinion we also held that a representative election should be set aside if an employer demonstrates that a union cloaked its supporters (in this case Foust and Buckner) with sufficient authority to create a perception among the rank and file that these employees were acting on behalf of the union and that the union did not repudiate these employees' statements or actions. *Id.* Or, in the alternative, we have stated that an election is invalid if when combined with other incidents, the threats were so aggravated that they created a coercive environment that rendered a free expression of ideas impossible. *Id.* at 355, 359; *see also NLRB v. Bostik Div., USM Corp.*, 517 F.2d 971 (6th Cir.1975).

In *Kitchen Fresh*, an alleged union agent threatened that something would happen to an employee or her sister; in fact, the employee's tires were subsequently slashed. The court held that an evidentiary hearing should have been held to determine whether the threat was made and if so, whether it was disseminated through the work force. The court concluded that although the threat may not have been enough to warrant a new election if issued in isolation, the cumulative effect of rumors, threats and other incidents may have been sufficient to warrant a new election. *Id.* at 359 n. 15.

Colquest argues that the company is entitled to have an evidentiary hearing in order to demonstrate that Foust and Buckner were UMWA agents. In support of its arguments Colquest submitted affidavits from employees Sam Perry and Leon Jeffers. These affidavits demonstrate that several employees were present when Foust indicated that he was a "union steward." Furthermore, Colquest asserts that only the UMWA has access to vital information concerning Foust's and Buckner's agency within its files. Thus, Colquest argues an evidentiary hearing is the only method through which it can discover this information.

In addition to threats, the affidavits submitted by Colquest demonstrate some evidence of electioneering at the polls as well. Since the parties contested six ballots and the union's margin of victory was 39 votes to 30 votes, it is concluded that the election could have turned on as few as two votes. Such a closeness in election results has been recognized as an important consideration which demands that any minor violation of the National Labor Relations Act cannot be dismissed summarily for it could have swayed the crucial votes. *See Bostik Div.*, 517 F.2d at 975 n. 5. In light of the small size of the work force, the severity of the threats and their sources, and the allegations of other misconduct, we hold that Colquest has raised material issues of fact concerning the fairness of the representation election.

Because the question of whether an employee is a union agent is a question of fact, *Kitchen Fresh*, 716 F.2d at 355, because Colquest has made through affidavits an offer of proof which demonstrates the severity of the threats and their possible dissemination through the work force, and because this offer of proof contradicts the Regional Director's findings, we hold that Colquest is entitled to an evidentiary hearing. Accordingly, we order the NLRB to grant Colquest a hearing on whether Foust and Buckner were union agents and on whether the threats made by these employees created an atmosphere which made a fair representation election impossible.

*Colquest's Fourth Objection: Promises to Waive Initiation Fees and Dues*

■ Colquest contends that the UMWA promised to waive union initiation fees and

123

dues in violation of the prohibitions established by the Supreme Court in *NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). In *Savair*, the Supreme Court held that a union unlawfully interferes with an employee's freedom of choice if it offers to waive initiation fees for any employee who signs a union authorization card before the representation election. Colquest employee Sam Perry stated in one of his affidavits that at a UMWA meeting union organizer Freddie Wright indicated that the union would waive initiation fees and dues for the first year for employees, but that employees hired after the union became the employees' representative would have to pay initiation fees. Colquest claims that its employees could have interpreted the offer of union agent, Freddie Wright, as a promise to waive fees conditioned on a demonstration of support for the union even if the offer did not contain this specific condition.

The NLRB and the UMWA contend that the union did not act unlawfully when it pointed out pre-existing union policy for employees if they joined the union. The UMWA maintains it has been its policy to waive initiation fees and first year dues for all unit employees at the time of the election and to provide other services for its members. The NLRB and the UMWA argue that no hearing is required to assess the union's conduct since Colquest has not alleged that the union made any unlawful promises of benefits.

■ The affidavits supplied by Colquest do not indicate that the UMWA promised to waive initiation fees and dues conditioned on demonstrations of pre-election support for the union. Thus, we agree with the NLRB and the UMWA that the union's conduct did not violate the prohibitions of *Savair*. Waivers promised to all employees regardless of pre-election union support are not objectionable. *NLRB v. First Union Management, Inc.*, 777 F.2d 330, 335 (6th Cir.1985). Thus, we conclude that Colquest is not entitled to an evidentiary hearing on its fourth objection.

### III. CONCLUSION

Because we hold Colquest is entitled to an evidentiary hearing on the issue of whether the threats directed at its employees prevented a fair representation election, we GRANT Colquest's petition for review. We DENY the NLRB's cross-petition for enforcement of its order, and REMAND this case for an evidentiary hearing on Colquest's third objection.