**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WHITE KNIGHT MANUFACTURING COMPANY, Respondent.**

No. 72–2030.

United States Court of Appeals,
Fifth Circuit.

March 1, 1973.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Charles M. Paschal, Jr., Director, Region 15, N. L. R. B., New Orleans, La., Avrum M. Goldberg, Atty., N. L. R. B., Washington, D. C., for petitioner.

John W. Brahm, Stanley S. Jaspan, Milwaukee, Wis., for respondent.

Before GEWIN, BELL and GODBOLD, Circuit Judges.

GEWIN, Circuit Judge:

This case arises out of a representation election held May 5, 1971 among certain employees of White Knight Manufacturing Company to determine whether they desired to be represented for collective bargaining purposes by Textile Workers Union of America, AFL–CIO. The election was held pursuant to a "stipulation for certification upon consent election", by secret ballot among the employees of a stipulated unit. None of the ballots was challenged. Out of 180 eligible voters, 92 voted for the union and 85 against. Only three eligible persons failed to vote. Following timely objections to the election by the Company, the Regional Director conducted an administrative investigation and recommended that the Union be certified. The Board affirmed, finding that "The [Company's] exceptions raise no material or substantial issues of fact or law which would warrant reversal of the Regional Director's . . . recommendations or would require a hearing." The Company thereafter refused to bargain collectively causing the Union to file an unfair labor practice charge with the Board under §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. On motion for summary judgment, the Board ruled that the refusal to bargain violated the Act.[1] Accordingly it ordered the Company to cease and desist from the unlawful conduct found and affirmatively required the Company to bargain collectively with the Union as the employees' exclusive representative. The Board now seeks enforcement of that order and we conclude that enforcement should be granted.

In its objections, White Knight alleged four grounds for setting the election aside,[2] each one involving threats of

1. Upon motion of counsel for the General Counsel for summary judgment after the case had been transferred to the Board, the Company was directed to show cause why the motion for summary judgment should not be granted. The Company did not file a response to the order to show cause or otherwise oppose the motion. See Fones v. N.L.R.B., 431 F.2d 417, 420 (5th Cir. 1970); N.L.R.B. v. Crest Leather Mfg. Co., 414 F.2d 421, 423 (5th Cir. 1969).

2. Initially there were seven objections to the election. The Regional Director found all to be groundless. Only four of them were reasserted before the Board and hence are properly reviewable by this court. They are summarized as follows: (1) in response to a hypothetical question, a Union official told a non-union employee that if there was ever a strike, he would do everything in his power to keep her from working. (2) A union supporter was heard by co-workers on two occasions to say that she was going to beat up another employee (apparently non-union). (3) Several non-union employees received anonymous phone calls

physical harm to certain of its employees because of their opposition to the Union campaign. The incidents described were claimed to have destroyed the laboratory conditions necessary to a free and fair election. White Knight now asserts that the Board committed reversible error by refusing to invalidate the election and by failing to direct a hearing on its objections. We reject both of these contentions.

██ We begin with a discussion of the validity of the Board's order. In reaching a decision on this issue, we must be mindful of the fact that Congress has vested the Board with broad discretion in dealing with matters relating to representation proceedings. Considerable weight, therefore, must be accorded to the Board's findings with judicial review limited to ascertaining only their reasonableness. N. L. R. B. v. Laney & Duke Storage Warehouse Co., 369 F.2d 859, 864 (5th Cir. 1966). Whether this court would reach the same conclusion as the Board is immaterial so long as the Board's finding that the election was conducted fairly is supported by substantial evidence on the record as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456, 462 (1951). The decisive factor in such cases is not whether improprieties occurred during the campaign, but rather whether the challenged conduct produced such a climate of tension and coercion that the employees were effectively precluded from making a free choice. N. L. R. B. v. Singleton Packing Corp., 418 F.2d 275, 281 (5th Cir. 1969). The burden of proof is on the objecting party. As this court observed in N. L. R. B. v. Golden Age Beverage Co., 415 F.2d 26, 30 (5th Cir. 1969):

> "This is a heavy burden; it is not met by proof of mere misrepresentations or physical threats. Rather, specific evidence is required, showing not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election."

██ White Knight initially argues that the Board erred because in reaching its decision it placed an improper reliance on the absence of an agency relationship between the Union and the objectionable conduct. We disagree. Even a cursory reading of the Board decision indicates that a number of other relevant factors were taken into account such as: (1) the Union's prompt action in calming a supporter who had been involved in heated personal disputes with two co-workers because of differences of opinion about the Union; (2) its public disapproval of the use of anonymous phone calls as a means of influencing the outcome of the election; and (3) its repudiation of the use of violence in connection with any of its activities. In our judgment, the lack of Union agency was not given conclusive or disproportionate weight by the Board[3] and consequently we must reject White Knight's contention in this regard.

██ Equally without merit is the argument that the Board failed to consider the cumulative impact of the challenged conduct on the outcome of the election. As the objecting party, it was incumbent upon White Knight to come forward with specific evidence showing

---

threatening them in connection with the upcoming election. (4) A foreign substance was thrown on the rear window and trunk of a non-union employee's automobile.

3. Although the absence of Union agency is not to be given conclusive effect in cases such as the instant one, it is, nevertheless, a factor which can properly be considered by the Board in reaching its decision. The rule is well established that where the challenged conduct is not attributable to either of the parties it can be given less weight than if the conduct were attributable to the parties themselves. Bush Hog v. N.L.R.B., 420 F.2d 1266, 1269 (5th Cir. 1969); N.L.R.B. v. Staub Cleaners, Inc., 418 F.2d 1086, 1088 (2d Cir. 1969).

that the atmosphere surrounding the campaign was so coercive that the employees were prevented from exercising a free choice. In our opinion, the record is devoid of such evidence. White Knight's objections described a series of incidents which, notwithstanding the closeness of the vote, were simply insufficient to justify setting the election aside. At the worst, these incidents amounted to nothing more serious than verbal excesses and isolated attempts to harass non-union employees, none of which had any demonstrated influence on the outcome of the election. Indeed, whatever impact they may have had, it was far from pervasive; for by the Company's own admission only six out of a total of 180 eligible voters were allegedly victimized. And there is no apparent indication that even any of these six were so intimidated by this conduct that they were unable to vote their personal preferences in the election. Hence, it is clear that there was nothing wrong about the Board's conception of the evidence; White Knight merely failed to meet its burden of proof. The various other grounds upon which the Board rested its decision have been mentioned earlier in this opinion. We are compelled to conclude that the Board's refusal to invalidate the election was correct in all respects and supported by substantial evidence in the record as a whole.

White Knight's second claim of error is that the Board's failure to conduct a hearing constituted a denial of due process. At the outset, it should be noted that there is no statutory requirement for a post election hearing in representation proceedings. Under the Board's Rules and Regulations, 29 C.F.R. 102.69(c), such a hearing is required only when it appears that the objections to the election raise "substantial and material" factual issues. This court has held on more than one occasion that this administrative procedure comports with the due process requirements of the Constitution. See, e. g., N. L. R. B. v. Smith Industries, Inc., 403 F.2d 889, 892 (5th Cir. 1968); N. L. R. B. v. Air Control Products, Inc., 335 F.2d 245, 249 (5th Cir. 1964). In order to establish the need for a hearing, the objecting party must present evidence which would constitute a prima facie showing sufficient to warrant setting the election aside. United States Rubber Co. v. N. L. R. B., 373 F.2d 602, 606 (5th Cir. 1967). In essence this means that "there must be 'specific evidence of specific events from or about specific people' in support of allegations having a basis in law sufficient to overturn the election." N. L. R. B. v. Golden Age Beverage Co., 415 F.2d 26, 33 (5th Cir. 1969).

The Board's denial of a hearing in this case turned largely on the fact that White Knight failed to make a prima facie showing that the election should be set aside and hence failed to raise substantial and material issues of fact. The Board took the approach that even if the alleged incidents took place, White Knight failed to show any adverse effect on the atmosphere necessary to the conduct of a free and fair election. The fact that only three persons out of 180 eligible voters failed to vote plus the fact that the results of the election were very close, considering all of the surrounding conditions and circumstances, lends little support if any to the contention that laboratory conditions were destroyed or that an aura of tension, fear and coercion pervaded the election. This conclusion is further supported by the fact that not a single ballot was challenged; and the election was by secret ballot. While an opportunity to examine and observe witnesses might have been helpful in determining the impact of the challenged conduct on the election, the need for such a procedure is still left to the sound discretion of the Board. From our review of the record in this case, we think that the Board exercised this discretion properly.

The Board's order will be enforced.