NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DECOTO AIRCRAFT, INC.,
Respondent.

No. 74–2021.

United States Court of Appeals,
Ninth Circuit.

March 6, 1975.

William Wachter (argued), Julius Rosenbaum, Atty., Elliot Moore, Deputy Associate Gen. Counsel, Washington, D. C., for appellant.

Wesley M. Wilson (argued), Yakima, Wash., for appellee.

Before CHOY and GOODWIN, Circuit Judges, and BURNS,* District Judge.

## OPINION

ALFRED T. GOODWIN, Circuit Judge:

In this proceeding to enforce an order of the National Labor Relations Board, the employer, Decoto Aircraft, challenges the legality of a second representation election which the board had ordered after the union lost the first election. We enforce the board's order.

Decoto Aircraft manufactures and sells aircraft control equipment. Local Lodge 1531, International Association of Machinists and Aerospace Workers, AFL–CIO had been trying to organize Decoto's Yakima plant. On November 20, 1972, the Seattle Regional Director of the National Labor Relations Board conducted a representation election, and the union did not obtain enough votes to win recognition.

The union filed a timely protest, asserting that Decoto had interfered with laboratory election conditions[1] and requesting that the election be set aside and a new one be ordered. In due course a new election was ordered, and the union won.

During the Regional Director's investigation of the union's charges, he notified Decoto that evidence of employer misconduct not specifically alleged by the union had been discovered, and that he intended to consider and weigh this evidence. On advice of counsel, Decoto objected to the Regional Director's inquiry into matters not specifically charged by the union. Decoto offered no evidence to rebut the Regional Director's additional evidence of misconduct, but stood on the defense that these "new" matters had not been covered by the charges.

In March 1973, the Regional Director issued his report on the union's objections to the first election. He concluded that the union's wage and hour claims were not meritorious. However, the claim based upon an alleged threat by Decoto to change the shift of a prounion employee, combined with five additional

---

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

1. Specific conduct alleged to have interfered with laboratory conditions is:

    1. Decoto's grant of wage increases subsequent to Aerospace's filing of the petition for election.

    2. Decoto's reduction of employee work hours (from ten hours to eight hours a day) during the week of the election.

    3. Decoto's threat of an undesirable shift change to an employee who was a union supporter.

findings [2] (herein called "additional findings") not specifically charged by the union, created a sufficient basis for setting aside the election.

Decoto promptly filed exceptions to the Regional Director's report. While Decoto asserted that the report was defective because new allegations and evidence were improperly considered by the Regional Director, Decoto also asserted that it was entitled to a hearing.

The NLRB, in its "Decision and Direction of Second Election" found no merit in Decoto's exceptions. The board denied the requested hearing "because the employer, having received reasonable notice of specific conduct alleged to have interfered with the election, refused to present any evidence rebutting those allegations to the Regional Director."

Following NLRB certification of Local 1531 as the unit's agent, Decoto refused to supply the union with requested bargaining information and refused to recognize and bargain with the local. Proceedings under sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), ensued.

Decoto admits its refusal to bargain, but challenges both the second election and the board's proceedings leading to the second election.

On April 3, 1974, the board issued its decision and order, requiring Decoto to provide the union with pertinent bargaining information; to bargain with the union; and to cease interfering with the unit employees' § 7 (29 U.S.C. § 157) rights.

In this proceeding to enforce the order we consider:

(1) Whether the Regional Director has authority to make additional findings and recommendations based on evidence of election interference uncovered during the investigation of an election but not otherwise related to the union's specified objections.

(2) Whether Decoto's refusal, during the Regional Director's investigation, to present evidence on allegations other than the union's specified objections precludes Decoto from later claiming that it is entitled to a hearing to resolve substantial and material issues of fact allegedly surrounding those allegations.

(3) Whether the cumulative effect of the shift-change charge and the additional findings was sufficient to warrant setting aside the initial election.

■ Decoto's assertion that the Regional Director's investigation should have been limited to the formal objections contained in the union's protest is not well taken. In reviewing Decoto's preelection conduct, the Regional Director was free to consider all evidence, relevant to the election, which was uncovered by the investigation. Independent, Inc. v. N.L.R.B., 406 F.2d 203, 206–207 (5th Cir. 1969). The Regional Director properly included the additional findings in his assessment of the climate surrounding the election.

■ Regarding Decoto's demand for a hearing, when the Regional Director investigates the circumstances of a challenged election, " * * * if it appears * * * that substantial and material factual issues exist which, in the exercise of his reasonable discretion, * * * may more appropriately be resolved after a hearing, he shall issue and cause to

---

2. The Regional Director alleged the following to constitute conduct detrimental to laboratory conditions:

    1. Decoto's coercive interrogation of unit employees regarding protected union activities.

    2. The substance of employer remarks to assembled unit employees about means of registering employee complaints, the reestablishment of shop committees, employee accessibility to management, pension funds, and working conditions.

    3. Employer's implied promises of future employee pension benefits.

    4. Employer remarks to employees in an employee meeting, including further discussion of pension benefits and improved methods of employee-grievance resolution.

    5. The circumstances surrounding the preelection circulation of a new employee handbook, which contained implied promises of future employee benefits.

be served on the parties a notice of hearing * * *." 29 C.F.R. § 102.69(d) (1973).

The burden was on Decoto to tender specific substantial and material factual issues to be resolved by a hearing. *See* N.L.R.B. v. White Knight Manufacturing Company, 474 F.2d 1064, 1068 (5th Cir. 1973). Sufficient "evidence" to warrant a hearing need not satisfy technical evidentiary requirements, and is not insufficient merely because it is not attested to, verified, or in affidavit form. *See* Henderson Trumbull Supply Corp. v. N.L.R.B., 501 F.2d 1224, 1227–1228 (2d Cir. 1974). But something more solid than a mere conclusory statement is needed.

Decoto had an opportunity to submit evidence rebutting the Regional Director's additional findings, but refused to do so. Decoto thus failed to meet its burden of showing that substantial and material factual issues existed. The board did not err in its June 14, 1973, decision refusing to grant Decoto's request for a hearing. *See* 29 C.F.R. § 102.69(d) (1973); *White Knight Manufacturing Company, supra.* The board clearly had authority to order the second election.

Decoto's response to the board's summary-judgment-show-cause notice again requested a hearing, but we agree with the board's statement in its decision granting summary judgment that "[i]t is well settled that in the absence of newly discovered or previously unavailable evidence or special circumstances a respondent in a proceeding alleging a violation of Section 8(a)(5) is not entitled to relitigate issues which were or could have been litigated in a prior representation proceeding * * *. [Footnote omitted.]" Decoto has not offered newly discovered or previously unavailable evidence. *Cf.* Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); 29 C.F.R. § 102.67(f) (1973).

We are satisfied that the cumulative effect of the facts including those uncovered in the Regional Director's investigation warranted setting aside the initial election. These charges remained uncontradicted. Decoto's tactical choice to stand "on the pleadings" left the proceedings in the posture of a default.

None of Decoto's allegedly unlawful acts, alone, was of a nature so coercive, egregious, or inherently detrimental to laboratory conditions as to justify setting aside the first election.[3] However, the board had the right to consider the totality of Decoto's conduct in the relevant preelection period. The board was free to conclude that the conduct represents a systematic pattern of activity tending to upset the laboratory conditions requisite to a valid election. *See also,* N.L.R.B. v. Shirlington Supermarket, Inc., 224 F.2d 649, 653 (4th Cir. 1955), where the court said:

> " * * * The soundness of the Board's judgment would seem to be demonstrated by the fact that the result of the election was different when the practices which the Board regarded as prejudicial were not engaged in. Certainly, we would not be justified in setting aside its action as an abuse of discretion in the light of the circumstances before us."

The quoted observation applies with equal force here.

The board will draft and submit an appropriate form of judgment in this court.

---

**3.** Decoto cites NLRB v. Tommy's Spanish Foods, Inc., 463 F.2d 116 (9th Cir. 1972), for the proposition that "[e]ven if the employer had informed employees [during the critical preelection period] of the fact that prior to the filing of the election petition the employer had investigated pension funds, this statement would not be grounds for setting aside the election."

We agree with Decoto's analysis of *Tommy's Spanish Foods,* but distinguish it from the case at bar. We do not base our holding solely upon the fact that Decoto informed its employees of a potential increase in pension benefits. Rather, it is based upon the totality of Decoto's conduct including, but not limited to, the pension benefit issue.