Consequently, the Board's order directing Glenside to bargain with the Union and to supply it with the requested information is therefore **ENFORCED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0197P (6th Cir.)
File Name:  01a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

HEALTH CARE AND
RETIREMENT CORPORATION
OF AMERICA, d/b/a Glenside
Nursing Center,
*Petitioner/Cross-Respondent,*

    v.

NATIONAL LABOR
RELATIONS BOARD,
*Respondent/Cross-Petitioner.*

Nos. 99-5604/5766

On Petition for Review of an Order of the National Labor Relations Board.
No.  22-CA-23154.

Argued:  June 20, 2000

Decided and Filed:  August 3, 2000[*]

Before:  KEITH, DAUGHTREY, and GILMAN, Circuit Judges.

—————————

[*]This decision was originally issued as an "unpublished decision" filed on August 3, 2000.  On February 23, 2001, the court designated the opinion as one recommended for full-text publication.

---

**COUNSEL**

---

**ARGUED:** Margaret J. Lockhart, COOPER & WALINSKI, Toledo, Ohio, for Petitioner. Christopher W. Young, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent. **ON BRIEF:** Margaret J. Lockhart, Michael L. Stokes, COOPER & WALINSKI, Toledo, Ohio, for Petitioner. Christopher W. Young, Aileen A. Armstrong, Frederick C. Havard, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent.

---

**OPINION**

---

KEITH, Circuit Judge. Health Care and Retirement Corporation of America d/b/a Glenside Nursing Center ("Glenside") petitions this Court for review of a National Labor Relations Board ("NLRB" or the "Board") order. The Board found that Glenside (1) refused to bargain with District 1199J of the National Union of Hospital & Health Care Employees, AFSCME, AFL-CIO (the "Union") as the certified bargaining representative of its employees, and (2) refused to provide the Union with certain requested information in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5).[1]

---

[1](a) It shall be an unfair labor practice for an employer –
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
. . .
(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

Third, the cases Glenside cites in support of its claim are readily distinguishable. For example, in *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970), the Supreme Court held that in cases involving the termination of welfare benefits, "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review." Here, the hearing officer made the initial decision, while the Board performed the reviewing function. Moreover, the hearing officer was not required to review his own conduct, but rather, Roger Wilcott's conduct.

As another example, in *Wasson v. Trowbridge*, 382 F.2d 807, 813 (2d Cir. 1967), reviewing officials acted as both policeman and judge, having participated in an investigation and then later in the adjudication of the allegations. Given the particularities of the specific case before it, the Second Circuit held that the plaintiff was entitled to show that members of the panel had such prior contact with the case that they could be presumed to have been biased. *Id.*

Here, the hearing officer was not part of any investigation. Rather, the hearing officer heard evidence and arguments from both sides. Furthermore, Glenside has failed to establish that the hearing officer's role as Board observer resulted in bias to it. Again, Glenside had not raised the Board observer's conduct as an issue. Glenside has failed to substantiate any conduct on the hearing officer's behalf that prejudiced it in any way.

We recognize that the dual role played by this individual may, in some instances, give rise to a meritorious due process objection. Thus, we note that our holding, allowing the same individual who presided over the election to also act as the NLRB's hearing officer, is limited to the specific facts of the instant matter.

Board and the courts have long held that the Board is entitled, if not affirmatively obligated, to make findings on fully litigated unfair labor practices.") (footnote omitted). For these reasons, we reject Glenside's claim.

**V.**

Glenside alleges that the Board has denied it Due Process because the Board allowed the same individual who presided over the elections to also act as the hearing officer. Glenside alleges that it challenged the conduct of the Board's election observer during the hearing. Thus, the hearing officer entertained arguments about his conduct to Glenside's disadvantage. Specifically, Glenside advances two arguments: (1) the hearing officer had to rule on the propriety of his own behavior; and (2) the hearing officer had to decide the case based, in part, on his personal knowledge, which could not be tested by cross examination. After conducting an independent review of the record in the proceeding, the Board rejected Glenside's claim. We agree for the following reasons.

First, at the time it filed its objection, or any time before the hearing, Glenside did not object to the Board observer's conduct. Moreover, during the hearing, Glenside did not directly implicate the Board agent's conduct. Rather, Glenside specifically objected to Union observer Roger Wilcott's possessing a Bible during the election. Glenside has failed to demonstrate how Wilcott's conduct warranted overturning the election and thus, can hardly show how the Board agent's observation of the conduct was objectionable.

Second, even during the hearing, Glenside did not request that the hearing officer recuse himself. Similarly, Glenside did not raise recusal or hearing officer bias in its post-hearing brief. Although Glenside now alleges that the hearing officer was required to review the efficacy of his monitoring during the hearing, Glenside did not raise this issue.

The Board has cross-applied for enforcement of its order. After carefully reviewing the record, the briefs of both parties, and the applicable law, and having had the benefit of oral argument, we deny Glenside's petition and enforce the Board's order in full.

**I.[2]**

Glenside operates a nursing home in New Providence, New Jersey. On March 16, 1998, the Union filed a representation petition seeking a Board-conducted election in a unit consisting of all full-time and regular part-time certified nursing assistants ("CNAs"), activity aides, central supply clerks, cooks, dietary aides, housekeeping employees, laundry aides, maintenance assistants, and receptionists employed at Glenside's New Providence, New Jersey facility.

Maya Comia, the Union's paid organizer, was in charge of the organizing drive. Employees Roger Wilcott, Joanna Barnwell, Pearly Ceine, Carol Fleurio, Marilyn Cadet, and Marlene Barnwell all supported the Union; were members of the In-Plant Organizing Committee ("IPOC"); and distributed authorization cards for the Union. However, Glenside produced no evidence that any of these individuals received compensation from the Union in exchange for services or support. Similarly, Glenside produced no evidence that the IPOC members organized any events or meetings for the Union.

Pursuant to a stipulated election agreement, an election was scheduled for April 30, 1998. Twenty-four votes opposed the Union, thirty-four supported the Union, and five ballots were challenged.

On May 7, 1998, Glenside filed eight objections alleging the Union's misconduct affected the election. More

---

[2]Additional facts are provided in the legal discussion of this opinion.

specifically, Glenside alleged that the IPOC members were Union agents and that they had threatened other employees to support the Union. In addition, Glenside claimed that IPOC members improperly posted pro-union posters, removed Glenside campaign posters, defaced the NLRB's official notice of election, and injected racial prejudice and religion into the campaign.

After an investigation, the Regional Director directed that a hearing be held. After the hearing, the presiding hearing officer overruled Glenside's objections. Glenside then filed exceptions to the hearing officer's report and recommendations. On December 28, 1998, the Board adopted the hearing officer's findings and recommendations and certified the Union as the exclusive collective-bargaining representative of Glenside's employees in the stipulated unit.

Glenside refused to bargain with the Union and to give it certain requested information.[3] Consequently, the NLRB's General Counsel issued a complaint alleging that Glenside's refusal to bargain and to provide the Union with the requested information violated Sections 8(a)(1) and (5) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(a)(1) & (5).

On March 26, the General Counsel filed a motion for summary judgement with the NLRB. On April 29, 1999, the NLRB issued a decision and order granting the General Counsel's motion for summary judgment. The Board found that all the issues Glenside raised were or could have been litigated in the prior representation proceeding and that Glenside did not offer to adduce at a hearing any newly discovered or previously unavailable evidence, nor did it allege any special circumstances that would require the Board to reexamine the decision to certify the Union as the

---

[3]The Union requested the unit employees' names, addresses, social security numbers, and dates of hire. It also requested information concerning employee wage rates; seniority lists; job descriptions; seniority; and health, life, and pension coverage.

union continued to treat the acceptance issue as one of the issues that was being litigated. *Id.*

In the instant case, Barnwell's status as a supervisor is unrelated to her alleged misconduct as a union supporter. Glenside did not object to Barnwell's status in its objections. Rather, Glenside first raised the issue at the hearing. A more analogous case for the instant facts is *Iowa Lamb Corporation*, 275 NLRB 185 (1985). In *Iowa Lamb Corporation*, the hearing officer found that the absence of a specific objection did not foreclose considering the conduct as objectionable. However, the Board found:

> The Petitioner did not allege that the statement was objectionable, the Regional Director did not identify it as an issue in his order directing hearing, and at the hearing the hearing officer did not inform the parties he would consider it in his report. Further, based on our review of the record, we find that the issue was not fully litigated.

*Id.* at 185.

In the instant case, an analysis of Glenside's supervisory claim would have required an inquiry into whether Barnwell possessed any one of the twelve powers enumerated in Section 2(11) of the Act, 29 U.S.C. § 152(11).[5] Such an inquiry is unrelated to Barnwell's alleged misconduct. Furthermore, such inquiry would have been unfair to the Union as it had no notice that Glenside planned to make Barnwell's supervisory status an issue. *See, e.g., United Mine Workers of America, Dist. 29*, 308 NLRB 1155 (1992) ("The

---

[5]The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. *NLRB v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 939 n. 11 (5th Cir. 1976) (citing 29 U.S.C. § 152(11)).

**E.**

Glenside asserted for the first time at the hearing that Joanne Barnwell was a statutory supervisor within the meaning of the Act and, thus, her pro-Union activities are objectionable. Despite Glenside's first raising the issue at the hearing, the hearing officer addressed the issue and rejected it. The hearing officer found that Barnwell scheduled routine assignments for other CNAs and advised them of such assignments; collected CNAs' complaints and concerns and informed the Charge Nurse of the same; and occasionally checked to see if CNAs' assigned duties had been completed. The hearing officer also found, however, that Barnwell's responsibilities derived from her experience and expertise, not from any imparted authority to act on the Employer's behalf. Furthermore, Glenside provided no evidence that Barnwell had authority to hire, discharge, reward, discipline, direct, evaluate, or assign overtime to other employees, or to effectively recommend any of the foregoing. We agree with both the hearing officer and the Board in rejecting Glenside's claim.

In defense of its claim, Glenside cites *United Mine Workers of America, Dist. 29*, which held "when an issue relating to the subject matter of a complaint is fully litigated at a hearing, the [judge] and the Board are expected to pass upon it even though it is not specifically alleged to be an unfair labor practice in the complaint." 308 NLRB at 1156 (citations omitted). There, the union split a fine hair claiming the complaint only alleged that the employer unlawfully aided the union, not that the union unlawfully accepted the employer's aid. *Id.* 1156. The Board rejected the union's claim and found that the parties had fully litigated the claim, particularly where the consolidated complaint, directed at both the employer and union, clearly alleged that the employer "rendered aid, assistance, and support of Respondent Union . . ." *Id.* at 1157. Although the allegations were directed to the employer only, the union denied them in its answer. Moreover, during the hearing, both the General Counsel and

employees' bargaining representative. The order requires Glenside to cease and desist from the unfair labor practices found and from, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their rights under Section 7 of the Act, as amended by 29 U.S.C. § 157. In addition, the order requires Glenside to supply the Union with the requested information, to bargain with the Union upon request, to embody any understanding reached in a signed agreement, and to post a remedial notice.

Glenside has appealed this order to this Court. Upon consideration of the record as a whole, we agree that substantial evidence supported the Board's findings of Section 8(a)(1) and (5) violations for the reasons stated below.

**II.**

The scope of our review of Board findings is well-established: Where there is substantial evidence in the record as a whole to support the Board's conclusions, they may not be disturbed upon appeal. *See* 29 U.S.C. § 160(e), (f); *Kux Mfg. Co. v. NLRB*, 890 F.2d 804, 808 (6th Cir. 1989). Moreover, "it is the Board's function to resolve questions of fact and credibility when there is a conflict in the testimony." *NLRB v. Baja's Place*, 733 F.2d 416, 421 (6th Cir. 1984) (per curiam); *Kux Mfg Co.*, 890 F.2d at 808.

"[B]allots cast under the safeguards provided by Board procedure [presumptively] reflect the true desires of the participating employees." *Kux Mfg Co.*, 890 F.2d at 808 (citing *NLRB v. Zelrich Co.*, 344 F.2d 1011, 1015 (5th Cir. 1965)). Thus, the burden of proof on parties seeking to have a Board-supervised election set aside is a "heavy one." *See Harlan No. 4 Coal Co. v. NLRB,* 490 F.2d 117, 120 (6th Cir. 1974). This burden is not met by proof of misconduct, but "[r]ather, specific evidence is required, showing not only that unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they

materially affected the results of the election." *NLRB v. Bostik Div., USM Corp.*, 517 F.2d 971, 975 (6th Cir. 1975) (quoting *NLRB v. White Knight Mfg. Co.*, 474 F.2d 1064, 1067 (5th Cir. 1973)). "It does not matter that the reviewing court might have reached different conclusions if the Board has resolved the case reasonably." *NLRB v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 937 (5th Cir. 1976) (citation omitted).

### III.

We must first address Glenside's allegation that IPOC members Roger Wilcott, Joanna Barnwell, Pearly Ceine, Carol Fleurio, Marilyn Cadet, and Marlene Barnwell (collectively the "IPOC members") are Union agents. The hearing officer rejected Glenside's allegation and the Board affirmed. We agree with both the hearing officer and the Board that the Union did not clothe the IPOC members with either actual or apparent authority, and thus their alleged threats were properly not imputed to the Union through traditional agency principles.

"Generally, a union is not responsible for the acts of an employee, unless the employee is an agent of the union." *Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351, 355 (6th Cir. 1983). To determine whether an employee is an agent of a union, the question must be analyzed within the framework of common law agency principles. *See Id.* The conduct of pro-union employees will only be attributed to a union where the union has "instigated, authorized, solicited, ratified, condoned or adopted" the conduct. *Id.* "The test of agency in the union election context is stringent, involving a demonstration that the union placed the employee in a position where he appears to act as its representative; it is not enough that the employee unilaterally claims representative status . . . " *Tuf-Flex Glass v. NLRB*, 715 F.2d 291, 296 (7th Cir. 1983) (citations omitted).

in the "yes" box did not have a tendency to mislead employees. *NLRB v. Hub Plastics, Inc.*, 52 F.3d 608, 613 (6th Cir. 1993). There, the extraneous marking was "'clearly discernible and sufficiently distinct from the Board's typewritten and printed notice so as to preclude any suggestion that the "X" was inserted by the Board or that it supported the [union] in the election.'" *Id.*

Similarly, here, the sloppily drawn "X" did not have a tendency to mislead the employees because it was clearly discernable from the Board's typewritten notices and disclaimers. Furthermore, with the exception of Human Resource Manager Kolb, who was not eligible to vote in the election, Glenside failed to produce any employee who saw the defaced notice during the brief time it was posted. Because the alleged defacement was clearly discernible and because Glenside produced no relevant witness who saw the allegedly defaced notice, the Board correctly rejected Objection 8.

### D.

Glenside alleges that the election should be set aside because the Union's election observer, Roger Wilcott, possessed a Bible during the polling, thereby injecting religion into the election. Wilcott's possessing and reading the Bible during the polling is undisputed. However, Glenside does not provide any precedent or case support for its argument that Wilcott's reading the Bible amounted to improper electioneering.

The hearing officer found that, at no time, did Wilcott make any reference to the Bible or any religious appeal to voters. In fact, Wilcott testified that the Board's agent prohibited him from talking to voters. Moreover, during the election, neither Glenside's election observer nor any voters objected to Wilcott's possessing or reading the Bible. The Board found that Wilcott's possessing and reading the Bible did not amount to prohibited electioneering and we agree.

### Objection 7

Glenside alleges that IPOC member Wilcott posted Union flyers throughout the facility, engaged in electioneering at Glenside's entrance in the days before the election, and tore down Glenside's posters in the weeks before the election. The hearing officer found that both Union and Glenside supporters campaigned on or near Glenside's property and the record failed to establish clearly whether Wilcott hung posters in the patient areas. Wilcott denied that he posted pro-union materials in the patient care areas. Glenside's only evidence to the contrary was Mark Tyrone Armstrong's testimony that he removed one pro-union posting near the front entrance. Furthermore, the hearing officer stated that the single example of Wilcott's pro-union posting was too isolated to rise to the level of objectionable conduct. We agree with the hearing officer's findings, particularly where Wilcott was not a Union agent.

### Objection 8

Glenside alleges that the Union defaced one of five Board Election notices by marking the "yes" box. Glenside offered testimony from Manager Kolb to support its claim. Kolb testified that she posted the notice around 10:00 a.m. At 3:15 p.m., Kolb found the crumpled notice on the floor near the bulletin board. The notice had a large "X" scribbled multiple times in pencil and covering the "Yes-Oui" box. Kolb took the defaced notice away and replaced it immediately. Kolb acknowledged that no eligible voters ever said anything to her about the defaced notice. The hearing officer rejected Glenside's claim because the notice clearly states that the Board did not make any extraneous markings. Furthermore, the notices state that the Board does not endorse any choice in the election.

In *Hub Plastics*, this Court affirmed the Board's determination that a defaced sample ballot did not warrant overturning an election because the anonymously placed "X"

"An employee's conduct may also be attributed to the union if the objector can demonstrate that the union has clothed the employee with apparent authority to act on behalf of the union." *Kitchen Fresh, Inc.*, 716 F.2d at 355. At a minimum, the party seeking to hold the union responsible for an employee's conduct based upon the theory of apparent authority must show that the union cloaked the employee with sufficient authority to create a perception among the rank-and-file that the employee acts on behalf of the union, and that the union did not disavow or repudiate the employee's statement or actions. *Id.*

Because the question of whether someone is acting as an agent of a union is a factual one, the Board's findings with respect to questions of agency, if supported by substantial evidence on the record as a whole, are "conclusive." *See Pacific Plywood Co. v. NLRB*, 315 F.2d 671, 672 (9th Cir. 1963) (citing 29 U.S.C. § 160(e)).

In this case, Glenside presented no evidence that the Union "instigated, authorized, solicited, ratified, condoned, or adopted" any conduct with which Glenside objected. Furthermore, aside from bare assertions, Glenside has not produced evidence that the Union cloaked the IPOC members with sufficient authority to create a perception that the IPOC members acted on the Union's behalf.

*Kitchen Fresh, Inc. v. NLRB* is directly analogous to the instant facts. There, the employer alleged that an IPOC principal was a union agent because she (1) characterized herself as the IPOC "leader"; (2) circulated authorization cards; (3) organized meetings between the union's paid organizer and the employees; and (4) acted as a "contact person," responsible for disseminating union information and rebutting rumors or statements circulating within the plant. 716 F.2d at 355 n.6. Rejecting the employer's agency claim, this Court held the principal did not have actual or apparent authority to act on behalf of the union because (1) she did not hold a formal position with the union, (2) the evidence did not

demonstrate that she appeared to speak on behalf of the union, and (3) the evidence did not indicate that the union failed to repudiate the principal's alleged misconduct. *Id.* at 355.

In this case, the evidence demonstrates that Maya Comia was the Union's paid organizer. There is no evidence that employees Marlene Barnwell, Joanna Barnwell, Pearly Ceine, Carol Fleurio, and Roger Wilcott, organized any events or meetings for the Union. Furthermore, Glenside failed to provide evidence indicating that the Union imparted any actual or implied authority to those IPOC members, which would support a finding that they were Union agents. There is no evidence in the record demonstrating that the IPOC members had apparent authority to act on behalf of the Union. There is no evidence that the Union manifested that the IPOC members were union agents. Although Glenside argues that the IPOC members were Union agents because they solicited authorization cards, such solicitations do not reflect the broad manifestation of authority necessary to render IPOC members agents. *See Tuf-Flex Glass v. NLRB*, 715 F.2d 291, 296 (7th Cir. 1983).

Because there was no evidence that these IPOC members were Union agents, the Board correctly concluded that the mere fact that the employees in question supported the Union's organizing efforts, attended organizing meetings, and engaged in various other protected, concerted activities is wholly insufficient to support Glenside's contention that they should be found to be agents of the Union. *See NLRB v. Herbert Halperin Distributing Corp.*, 826 F.2d 287, 290-291 (4th Cir. 1987) (union not responsible for employees who were "outspoken union supporters," where the professional union staff was heavily involved in the campaign, and the union, not the employees, signed and distributed the union's literature, conducted the union's meetings, and kept track of the authorization cards). We believe that the Board had substantial evidence to conclude that the IPOC members had so few responsibilities and such limited authority that they

The hearing officer correctly found Higgs's statement ambiguous because Higgs's testimony did not corroborate Glenside's allegation. Higgs's testimony did not reveal that anyone had specifically threatened her. As the hearing officer noted, Barnwell's statement was not addressed to a particular employee. Moreover, Higgs herself stated that Barnwell "didn't threaten to kill" her.

### Objection 5

Glenside alleges Union supporter Pearly Ceine improperly injected racial prejudice into the campaign by yelling, in the presence of other employees, at a visiting director of nurses of Haitian origin "we don't need no Haitians telling us what to do." Pearly Ceine denied making the remark. In support of this allegation Glenside presented witnesses who either relied on hearsay to support their testimony, denied hearing the remark, or overheard rumors about the remark. No Glenside witness provided first-hand knowledge of the alleged statement. Moreover, as the hearing officer noted, such hearsay evidence is insufficient to establish the truth of the allegation. *See NLRB v. Shawnee Plastics, Inc.*, 492 F. 2d 869, 871 (6th Cir. 1974); *NLRB v. MYCA Prods.*, 352 F.2d 571 (6th Cir. 1965).

### Objection 6

Glenside identifies two incidents, in which the Union exhibited threatening behavior. In one incident, an unidentified person made a gouge in the passenger-side door of Administrator Lapore's car. In the second incident, Business Office Manager Francis Bevilaque received a message on her answering machine from an unknown individual "[you] walk around the facility with an attitude. Don't worry, bitch, you'll get yours." We agree with both the Board and hearing officer. Because the person or persons responsible for these incidents are unknown, there is no reason to attribute these incidents to the Union.

indicates that Glenside's witnesses did not provide credible testimony. The two contradicted each other with regard to the racial epithet and one could not remember the circumstances surrounding Wilcott's alleged statement.

### Objection 2

Glenside alleges that Union supporters Marlene Barnwell, Joanna Barnwell, Carol Fleurio, and Roger Wilcott threatened that if employees did not vote for the Union, they would lose their jobs. However, Glenside's witnesses' testimony did not support these allegations. In many instances, Glenside's witnesses testified that the allegation was pure rumor.

### Objection 3

Glenside alleges that union supporter Marilyn Cadet made an obscene gesture toward CNA Dolores Hayes and told her she had better vote for the Union.[4]  In her testimony, however, Hayes expressly denied that Cadet threatened her. Furthermore, as the hearing officer held, the lewd act, alone, did not establish evidence of objectionable conduct.

### Objection 4

Glenside alleged that IPOC member Marlene Barnwell threatened to kill CNA Higgs if Higgs did not vote for the Union. In actuality, Higgs testified that Barnwell stated, to no one in particular, "no one go to Kay [Director of Nursing] or [Administrator] Lapore with my name. I want to go to heaven but I'll just have to die and go to hell, because I would kill someone." Higgs also testified that Barnwell "didn't threaten to kill me."

---

[4]Hayes testified that approximately two weeks before the election, Cadet "got mad and pulled up her dress around her waist and the only thing I saw was just her underpants. Then she patted her behind . . . and walked out the door."

could not be mistaken for agents. *Kux Mfg Co.*, 890 F.2d at 809.

### IV.

### A.

Having thus found that the Union did not extend its imprimatur to the alleged IPOC members misconduct, we give less weight to Glenside's allegations involving IPOC wrongdoing in determining whether the hearing officer properly found the election valid. Under such circumstances, the election must be overturned only if the conduct was "sufficiently substantial in nature to create a general environment of fear and reprisal such as to render a free choice of representation impossible . . . ." *Hickman Harbor Service v. NLRB*, 739 F.2d 214, 220 (6th Cir. 1984). For the reasons outlined below, we agree with the Board that the alleged threats and misconduct did not taint the entire election.

### B.

At the outset, the Board's conclusions as to many of Glenside's objections turned on its witnesses' credibility. Moreover, this Court recognizes that "[t]he standard of review for the Board's determinations of credibility is narrow." *Local Union No. 948 v. NLRB*, 697 F.2d 113, 117 (6th Cir. 1982). It is the Board's function to resolve questions of fact and credibility when there is a conflict in the testimony. *See Adair Standish Corp. v. NLRB*, 912 F.2d 854, 860 (6th Cir. 1990); *NLRB v. Baja's Place*, 733 F.2d 416, 421 (6th Cir. 1984) (per curiam). "The decision of the Hearing Officer is entitled to considerable weight where the issue turns on the credibility of the witnesses who he alone saw." *Certain-Teed Prod. Corp. v. NLRB*, 562 F.2d 500, 505 (7th Cir. 1977). Thus, "credibility determinations must be accepted unless it is clear that there is no rational basis for them." *NLRB v. Valley Plaza, Inc.*, 715 F.2d 237, 242 (6th Cir. 1983).

This Court will not overturn the Board's credibility findings based simply on a claim that the Board "credit[ed] the testimony of witnesses of the General Counsel most of the time, and . . . credit[ed] the testimony of the witnesses of the employer hardly any of the time [.]" *Lane Drug Co. v. NLRB*, 391 F.2d 812, 820 (6th Cir. 1968).

Glenside cites *NLRB v. Cook Family Foods, Ltd.*, for the proposition that "a reviewing court does not act as a mere rubber stamp for the administrative agency." 47 F.3d 809, 816 (6th Cir. 1995) (internal punctuation and citations omitted). However, we also stated in *Cook Family Foods, Ltd.*, that "this court has declared itself unwilling to uphold unfair labor practice findings that rest upon the uncorroborated testimony of persons who stand to receive backpay if the findings are upheld." *Id.* at 816 n. 5. There, we rejected the testimony, upon which the hearing officer relied, because an interest in backpay directly inspired the testimony the witnesses gave. *Id.*

In the instant case, the hearing officer relied upon evidence from both Glenside and the Union. In numerous instances, as outlined below, Glenside's proffered testimony did not substantiate its allegations. In equally numerous instances, Glenside's witnesses denied allegations and sometimes contradicted each other. The self-interested testimony addressed in *Cook Family Foods, Ltd.*, is not found here, and the case, therefore, is distinguishable.

Furthermore, "[t]his is not a case where the administrative law judge made credibility determinations without explanation." *Commercial Honing of Detroit, Ltd. v. NLRB*, 770 F.2d 76, 78 (6th Cir. 1985). In his decision, the hearing officer explained in detail his reasons for crediting some witnesses and not others. "This court is required to review the case on the record and may not substitute its judgment for that of the Board on the basis of '[s]uspicion, conjecture and theoretical speculation' rather than applying the substantial evidence standard of review." *Id.* (citing *TRW, Inc. v. NLRB*,

654 F.2d 307, 312 (5th Cir. 1981)). We find the hearing officer's reasoning and conclusions both rigorous and sound.

### C.

Each of Glenside's objections lacked substantial evidence. In fact, some witnesses contradicted each other; some witnesses offered layers of hearsay evidence; some witnesses credited their testimony to rumors; and much of Glenside's supporting evidence was highly ambiguous. Although Glenside alleges that this Court must view its objections cumulatively, Glenside has failed to substantiate any single objection. The burden is on the party seeking to overturn the election to show by specific evidence not only that unlawful acts occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the election. *See NLRB v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 938 (5th Cir. 1976) (citing *Fones v. NLRB*, 431 F.2d 417, 420 (5th Cir. 1970)). Because Glenside failed to substantiate its objections, the Board's acceptance of the hearing officer's conclusions was reasonable.

### Objection 1

Various Glenside witnesses testified that IPOC member Roger Wilcott made threatening statements and used a racial epithet. However, the testimony surrounding the accuracy of these alleged statements and whether they occurred at all involved credibility determinations. The hearing officer, who had an opportunity to examine the witnesses directly, rejected Glenside's allegations. The hearing officer found that one of Glenside's witnesses testified on cross examination that she was uncertain as to whether Wilcott made the racial slur and also acknowledged that Wilcott had informed her she had a choice as to whether to support the Union. Another Glenside witness could not remember the context or time of any alleged threat.

In addition to a narrow standard of review for witness credibility determinations, our own review of the record